Barnes v. Huson.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 13, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]

---

CHARLES W. BARNES and others, Executors &c. and others, appellants, *vs.* CLARA HUSON and others, respondents.

Considering the evident purpose and policy of section 52 of the statute of Wills, (2 *R. S.* 66,) the mischief intended to be remedied, and the fact that it is a remedial statute, to be liberally construed, its meaning is, to prevent the lapse of a devise or bequest to a descendant of the testator, although the proposed devisee or legatee shall have died before the testator; provided such devisee or legatee shall have left lineal descendants, who shall be living at the testator's death; and this whether the death of the proposed devisee or legatee shall have occurred before or after the date or making of the will.

This interpretation is fortified by several decisions in the English court of chancery upon the construction of the corresponding section of the English statute of Wills, (1 *Vict. ch.* 26, § 33,) in which it has been held that whether the death of the devisee occur before or after the making of the will, is of no importance.

In such a case, evidence that the testator had heard a rumor of the death of one of his children, before the making of the will, is wholly immaterial. The statute leaves open no door for dispute on that subject, or for the introduction of such proof.

Barnes *v.* Huson.

The words "shall die," in section 52 of our statute, is not to be construed as referring to a time intermediate the making of the will and the death of the testator.

APPEAL from a decree made by the surrogate of Yates county, ordering, among other things, the payment of certain legacies to the respondents, who are children of the late Calvin Huson, Jr., deceased.

Calvin Huson, Jr., was the son of Calvin Huson, who resided in Yates county, and who, on the 27th day of May, 1867, made and executed his will, and afterwards a codicil thereto. By the fifth clause of the will the testator devised and directed as follows: "I hereby direct that the sum of ten thousand dollars shall be divided between my sons and daughters in the following manner: to each of my sons two dollars, to each of my daughters one dollar, Susan and Elizabeth excepted, who are provided for above; and having advanced the following sums to my sons, I hereby order that the following sums shall be deducted from their shares of the ten thousand dollars, as follows: from David C. Huson's share, the sum of four hundred dollars; from Calvin Huson Jr.'s, eight hundred dollars; from William H. Huson's, four hundred and fifty; from Lewis M. Huson's, three hundred; from Charles M. Huson's, four hundred and twenty; from George E. Huson, fifty dollars. I hereby order and direct that these sums so deducted shall be added to the remainder of my property, real and personal, and divided equally among my heirs, whose names are here mentioned, as follows: Jane, David C., Calvin Jr., William H., Emeline, George E., Lewis M., Clark, Charles M., Mary Ann."

The testator, Calvin Huson, died in May 1867. His son, Calvin Huson, Jr., died at Richmond, Virginia, on the 14th of October, 1861. David Huson, another son, also died before the execution of the will. Both of these sons left descendants. And James and Samuel Huson,

two other children of the testator, died before the making of the will, leaving no descendants.

The respondents claimed the share that would have gone to their father, had he survived the testator, under the said fifth clause. To obtain the payment thereof, they, on the 7th of December, 1870, filed their petition in said surrogate's court, praying payment thereof; whereupon the surrogate made an order that a summons issue to the executors, requiring them to appear on the 20th of December, to show cause why the legacies should not be paid to the petitioners. On the return day the executors appeared, and the hearing was adjourned until the 16th day of January, 1871, when the petitioners appeared by counsel; and the executors appeared in person and by counsel, and filed their answer to the petition. Henry M. Stewart appeared as special guardian for infant children of David C. Huson, deceased, and the other appellants also appeared. The answer of the executors denied that they had assets to pay the legacies, insisted that the surrogate had no jurisdiction to determine any question involving the construction of the will, and averred that by the terms and provisions of the will the petitioners were not entitled.

On the hearing, the will and codicil of the testator were admitted, and were offered in evidence by the respondents. The petitioners then offered to prove that the testator at the time of making his will, had heard of the death of Calvin Jr., and that David died in California. This was objected to by the appellants, but the objection was overruled by the surrogate. The counsel for the appellants, saving the benefit of their objections and exception, here admitted the facts offered to be proved, as above. The counsel also objected to the jurisdiction of the surrogate. No further evidence was given in the case. The appellants then objected that the evidence was insufficient to warrant the surrogate in making a decree in favor of the petitioners. The objection was overruled, and the appellants excepted.

Barnes *v.* Huson.

On the 16th of January, 1871, the surrogate made the decree appealed from, by which, among other things, he ordered, adjudged and decreed, that under and by virtue of the terms and provisions of the said last will and testament, the children of the said Calvin Huson, Jr., deceased, were collectively entitled to the share and interest in the estate of the said Calvin Huson, deceased, that their deceased father would have taken had he survived the said testator, and that the petitioners were entitled to the four-fifths part of the said share or interest. And that the children of the said Calvin Huson, Jr., deceased, under subdivision 5 of said last will and testament, were collectively entitled to two seventeenths of the ten thousand dollars therein mentioned, and the interest thereon after the lapse of a year from the death of the said testator, less the sum of $800 therein directed to be deducted from the share given and bequeathed to the said Calvin Huson, Jr., deceased, and that the amount to which said children were then entitled of the said sum of ten thousand dollars and interest, after making the deduction aforesaid, was the sum of $446.34, and that the petitioners were entitled to four fifths thereof, being the sum of $357.08; which said amount the said executors were ordered and directed to pay to the general guardian of the said petitioners within twenty days from the date of said decree.

*Charles S. Baker*, for the appellants.

I. As to the proper construction of the will, and its legal effect as regards the petitioners. 1. It is proper to ascertain whether, by the language employed therein, the petitioners are directly named as beneficiaries. By no construction or interpretation of the language used, can the children of Calvin Huson, Jr., be claimed to have been mentioned as legatees in the will. No language except that employed in the 5th clause can be contended to have any reference to them. The terms employed there

do not include Calvin Huson, Jr.'s children. They are not "sons and daughters" of the testator. Their names are not to be found among the "heirs whose names are here mentioned." The word children, or grand-children, is not to be found in the will. Neither is the word heir or heirs mentioned, except when expressly limited and applied to a particular individual, and such heirs and individuals named. 2. It being shown that no language is employed whereby the petitioners are mentioned or named, directly, we will next inquire whether they are included by language having a general signification, by which they may be entitled. (*a.*) It will be found, upon an examination of the will, that the word heirs, children, issue or descendants, or any term of like import, is not used when applied to a class. And the word heirs is only once used, and then the persons mentioned as such, are particularly named. (*b.*) Again, the language used expressly limits and applies the bequest to the legatees whose names are particularly set forth, without extending it to their heirs, representatives, administrators, executors or assigns. 3. It being found that the petitioners are not included among the legatees named in the will, either by direct language, or words of general signification, it only remains to be seen whether they may be otherwise entitled. (*a.*) It is submitted there are only three ways whereby the petitioners can in any event claim the legacy expressly bequeathed to their father. 1st. By force of the common law. 2d. By evidence *dehors* the instrument, that such was the intention of the testator. 3d. By the provisions of the statute they have become invested with his rights therein. (*b.*) It probably will not be disputed that, at common law, the legacy bequeathed to Calvin Huson Jr. lapsed. The general rule is well settled that when the legatee dies before the testator, the legacy will lapse. (*Swinburne, pt.* 7, § 23. *Williams on Exrs.,* 1084. *Ward on Legacies,* 2 *Law Lib., N. S.,* 84, 85; *marg.* 163, 164. *Redf. on Law of Wills, part* 2, 484.) *Swin-*

Barnes *v.* Huson.

*burne* defines the rule : " If the legatee dies before the day of the death of the testator, the legacy is void ; neither can the executors or administrators demand the same. This is obvious from the fact that the will does not become operative until the death of the testator, and this is so, notwithstanding the will contain the words heirs, executors, administrators, &c." (*Maybank* v. *Brooks,* 1 *Brown C. C.* 84; *cited and approved by Denio, J., in Van Beuren* v. *Dash,* 30 *N. Y.* 425. *Lovelass on Wills,* 9 *Law Lib. N. S.,* 238 ; *marg.* 445 [7.] *Redf. on Wills, part* 2, 485.) But as mentioned, no words of this kind, even, are used in the will before us. Had the language of the will been that the bequests were to go to the children of the testator, naming them, the same result would have followed, and the legacy lapsed. ( *Ward on Leg.,* 2 *Law Lib. N. S.,* 60 ; *marg.* 115, 116. *Radcliffe* v. *Buckley,* 10 *Ves.* 195.) " Nor will it make any difference in this respect that the testator after the death of the devisee republishes or confirms his will, with the full knowledge of the death of the devisee and of his having left issue. Nor is evidence, *dehors* the will, admissible in such case to show an intention on the part of the testator that the same should not lapse." (*Lovelass on Wills,* 9 *Law Lib. N. S.,* 239 ; *marg.* 447, *note u,* 238. *Maybank* v. *Brooks,* 1 *Brown C. C.,* 84. *Redf. on Wills, part* 2, 493, [9].) (*c.*) We confidently believe we have shown that the petitioners are not entitled, at common law, and that by it the legacy to Calvin Huson, Jr., lapsed. 4. We will next inquire whether evidence, *dehors* the will, is admissible to show that it was intended by the testator that the legacy should go to Calvin Huson, Jr.'s children, and the character thereof. Incidentally, we have shown that evidence to show that the testator knew of the death of the legatee at the time of making the will is inadmissible ; and that he republished or confirmed it with such knowledge, is likewise incompetent. (*See cases cited supra. Ward on Leg.,* 2 *Law Lib.* 84, 85 ; *marg.* 164. *Redf. on Wills, part* 1,

569, 570, *n.* 67, *and cases cited. Judy* v. *Williams,* 2 *Carter,* 449.) The surrogate manifestly erred in admitting the evidence, and the appellant's objections should have been sustained. (*a.*) The intention of the testator is to be gathered from the words of the will itself, and unless there is ambiguity in the language employed, parol evidence is inadmissible to explain what was the intent. (*Mann* v. *Mann,* 14 *John.* 1. *Miller* v. *Travers,* 8 *Bing.* 244. 21 *Eng. C. L.,* 288. *Redf. on Wills, part* 1, 574, 575, *n.* 2, *and cases cited. Arthur* v. *Arthur,* 10 *Barb.* 9.) (*b.*) Nor is parol evidence admissible to show that a new legatee was intended, when the will is silent. It cannot be imported. (*Oxenden* v. *Chichester,* 4 *Dowl. P. C.* 65. *Newburgh* v. *Newburgh, cited in Miller* v. *Travers, supra.*) (*c.*) There is no ambiguity in the language employed. It is as plain, clear and intelligible as it could possibly be made. The legacies are not given to a class, but the legatees are individually named. No evidence of intention can be given which will warrant or athorize the petitioner to claim under the will. 5. This brings us to the only remaining inquiry, and we believe the most important question which is to be presented in this case, i. e., are the petitioners entitled by the provisions of the statute? By our statute of wills, (2 *R. S.* 66, § 52; 2 *Edm. Stat. at Large, p.* 66,) it is provided: "Whenever any estate, real or personal, shall be devised or bequeathed to a child or other descendant of the testator, and such legatee or devisee shall die during the lifetime of the testator, such devise or legacy shall not lapse, but the property so devised or bequeathed shall vest in the surviving child or other descendant of the legatee or devisee, as if such legatee or devisee had survived the testator and had died intestate." It remains to be seen whether the petitioners come within the purview of the statute. There was, by the will, a bequest of personal estate. At the time of the execution of the will the testator had no child by the name of Calvin, Jr. He

was dead. At such time there was no person in being upon whom the will was operative. In legal effect it was the same as if there had never been such a person in existence. The statute being an innovation on the common law rule, it should receive, at least, a literal construction, and ought not to be extended to any case not coming within its terms. (*Dwarris on Statutes*, 9 *Law Lib.* 43 ; *marg.* 695.) Upon an examination of the section it will be perceived by the language employed therein, that the death of the legatee or devisee is mentioned in the future tense, i. e., it presupposes that something has occurred before such death. And we submit that it was, that the devise or bequest had been made, and the legatee or devisee had died thereafter. That this would follow if a plain grammatical construction is to be given to it, is almost too clear for argument. And were it not for the cases to which we are about to advert, arising under an English statute relating to the same subject, we should claim that this were so beyond question. The language employed is, " whenever any estate, real or personal, shall be devised or bequeathed to a child or other descendant of the testator, and such legatee or devisee shall die during the lifetime of the testator." * * Now it would seem clear, from the language, that, 1st, there shall be a devise or bequest to a person in being, of the kind mentioned in the statute ; 2d, that such person shall die (not has died) during the lifetime of the testator. In other words, at the time of the execution of the will the same must be operative, i. e., there must be a devise or bequest to a child or descendant, (there can be no devise or bequest to a child or descendant if there is none,) and then if such child or descendant " shall die" during the lifetime of the testator, leaving persons of the character mentioned in the statute, the devise or bequest shall not lapse. If it had been intended to have provided for cases of the legatee or devisee dying before, as well as after the execution of the will,

the language would at least have been, " and such legatee or devisee *shall have died* during the lifetime of the testator," &c.

We are now brought to the consideration of the English statute referred to, and the decisions respecting the same. It is provided, " that when any person, being a child or other issue of the testator, to whom any real or personal estate shall be devised or bequeathed, for any estate or interest not determinable at the death of such person, shall die in the lifetime of the testator, leaving issue, and any such issue of such person shall be living at the time of the death of the testator, such devise or bequest shall not lapse, but shall take effect as if the death of such person had happened immediately after the death of the testator, unless a contrary intention shall appear by the will." (1 *Victoria*, *ch.* 26, § 33.) Under this statute the English courts have held, that where the death of the donee happened before the date of the will, the surviving issue take as heirs or distributees, notwithstanding the language of the act is 'shall die,' and they construe the language of the statute (" shall die ") to mean after the passage of the act. (*Mower* v. *Orr*, 7 *Hare*, 473. *Wisden* v. *Wisden*, 2 *Sm. & Gif.* 396. *Barkworth* v. *Young*, 4 *Drewry*, 20. 5 *Hare*, 306.) It is plain, and it can but be perceived, that a stronger reason could hardly be adduced, as to the terms of our statute having the effect which we have claimed, than is found in the ground upon which the decision was put by the English courts. The sole ground, as will be seen on an examination of the cases, was, that they construed the words of their statute, " shall die," to mean " after the passage of the act." In other words, they said that the time of the death of the legatee, was not intended to apply to the person of the legatee, but to the passage of the act, thereby admitting, if it was to be applied to the time of the death of the legatee, then such death must

occur after the execution of the will, else the legacy would lapse. We say, whatever might have been the decision of their courts under their act, the statute of this State cannot be tortured so as to mean any such thing. To illustrate the fallacy of the reasoning, can it be doubted, although a devise had been made to a child, or other person described, then living, but who had died before the passage of our statute, and the testator died after its passage, that the legatee's children, or descendants would be entitled? In other words, it is entirely immaterial under our statute, whether the death of the child, or other decease, occurred before or after the passage of the statute, to entitle his child, or other decendants, to take. (*Bishop* v. *Bishop*, 4 *Hill*, 138.) Our statute, by express language, and in the most direct terms, applies it to the person of the legatee or devisee, and the time mentioned is not the passage of the act, but the death of the legatee or devisee. Its language is, "and such legatee or devisee shall die," &c.; "shall die," not after the passage of the act, but after the execution of the devise or bequest, and during the lifetime of the testator.

II. It need scarcely be added, that so far as the petitioners are concerned, we have not been compelled to invoke the aid of any extraneous circumstance to prevent them from taking under the will. If we were correct in our first position, that they were not entitled at common law, they simply stand here as claiming under a statutory provision, and like every claimant, they must clearly show that the statute gives them such right. It is no fault of the executors or legatees that prevents them from obtaining the legacy. The testator was bound to know the law. He could have bequeathed this legacy to them if he so desired. And if the legislature have failed to provide for their case, it is an omission for which the legatees or executors are in no wise responsible.

*F. A. Macomber,* for the respondents.

I. By the terms of the will these children are entitled to the legacy. 1. What was the intention of the testator? He had heard of the death of his son Calvin, Jr., who had died a prisoner of war. It is not to be presumed that the testator intended an idle thing in naming such deceased son in his will. The $10.000 item is not bequeathed to the testator's children by name, but he directs it to be "divided between my sons and daughters." But it is only when apportioning the respective sums among them, by making deductions for advancements to some of them, that he names his son Calvin, Jr. The whole clause of the will seems to be a method of saying—and a very good method too—that his intention is, that the share of Calvin, Jr., shall go to his children, but having advanced $800 to their father, that sum shall be deducted therefrom. The expression, "sons and daughters," is synonymous with the word "children," and must include grand-sons and grand-daughters, in all cases where the word children would include grand-children, or would be held to be equivalent to "issue." It is deemed to be abundantly settled, that grand-children will take under a bequest to children, whenever that is necessary in order to give effect to the words of the will, or such appears to have been the evident intention of the testator. (2 *Redf. on Wills,* 337. *Lawrence* v. *Hebbard,* 1 *Bradf.* 252.) All that reason, and the generally received rule of law upon the subject, would seem to require, in order to give the word a secondary import, is that it should appear that the testator was aware, at the date of his will, that the term children, or any other similar term, used by him, could have no strict, literal and technical application to the existing facts, in order to give it a secondary signification. (*Crook* v. *Whitley,* 7 *De G. M. & G.,* 490, 495, 496. *Bedford's Appeal,* 40 *Penn.* 18. *Bond's Appeal,* 31 *Conn. R.* 183. *Campbell* v. *Rawdon,* 18 *N. Y.* 412. 4 *Kent's Com.* 278, *note.* *Wythe* v. *Thurlston,*

*Ambler*, 555. *Maynard* v. *Wright*, 26 *Beav.* 285. *Radcliff* v. *Buckley*, 10 *Vesey*, 195. *Earl of Oxford* v. *Churchill*, 3 *Vesey & Beam.* 69. *Mowatt* v. *Carow*, 7 *Paige*, 328.) In *Davis* v. *Paul*, (6 *Dana*, 52,) it was held, where a testator, who had devised land to his son, and his heirs, and appointed him executor, after the son's death added a codicil, in which he referred to the death of his son, and, without making any other disposition of the land, appointed other executors, that the intention that the son's heirs should take the estate under the will was sufficiently manifest, and the devise had not lapsed. 2. There is a very important fact, growing out of the condition of the testator's family, which goes far to demonstrate that it was the intention of the testator that these children should take under the will, namely: The testator had had two other sons, James and Samuel, who had died before the making of the will; but they left no descendants, and their names nowhere appear in the will or codicil; while Calvin, Jr., and David C.—who had also died before the making of the will, leaving descendants—are mentioned by name. The occurrence of such a fact in a single instance would be convincing; but where it occurs in regard to two deceased sons, and there appears upon the face of the will an apparent desire not to disinherit any heir, the conclusion is irresistible, that the testator's manifest intention was, that the descendants of his deceased children should take under the will. 3. It is the duty of courts to incline to that construction which would not result in the exclusion of an heir to a share of the estate. (*Doe* v. *Wilkinson*, 2 *T. R.* 209. *Jarman on Wills*, 742.)

II. The legacy did not lapse, but vested in the children, under the statute. The statute declares that a legacy or devise, where the legatee or devisee shall die during the lifetime of the testator, leaving descendants who shall survive the testator, shall not lapse, but shall vest in such descendants, as if such legatee or devisee had survived the

testator and had died intestate. (2 *Stat. at Large*, 66, § 52, *Edm. ed.* 2 *R. S.* 66, § 52.) The revisers' note to this section is as follows : " There is an obvious defect in the existing law, in the cases above provided for, which we have sought to remedy." Obviously, there could be no question in regard to these children taking the share of their father, if their father had died intermediate the making of the will and the death of the testator. (*Bishop* v. *Bishop*, 4 *Hill*, 138. *Van Beuren* v. *Dash*, 30 *N. Y.* 393. *Fisher* v. *Hill*, 7 *Mass.* 86. *Johnson* v. *Johnson*, 3 *Hare*, 157.) The question therefore is, does the statute save the legacy to the descendants of the legatee in case of the legatee's death before the execution of the will? 1st. Such a case is within the words of the statute. 2d. It is within its spirit. Had the legislature intended to limit its application to cases where the legatee dies intermediate the making of the will and the death of the testator, different language would have been employed, or other words would have been inserted; such, for instance, as substituting for the words " shall die," the words " shall afterwards die." With such limitation, however, the substantial good which the statute was designed to effect would have been lost. For instance, in many cases it would be impossible for the testator to know whether the legatee were living or not, and if living, whether he had children or not; and however desirous he might be to make provision for his child and his child's descendants, he could not do so except in a devious and uncertain way. The statute, on the other hand, by its beneficent provisions, in a very simple and just manner, preserves the property in a direct line of lineal descent from the testator. We are not, however, without authority, directly in point, in support of this construction. Cases have arisen under the English statute, which is similar to ours, and these cases seem to be decisive of the question. (*See Wisden* v. *Wisden*, 2 *Sm. & Giff.* 404; *Winter* v. *Winter*, 5 *Hare*, 306; *Mower* v. *Orr*, 7 *id.* 473.)

See also a very careful opinion of Vice Chancellor Kindersley in *Barkworth* v. *Young*, (4 *Drewry*, 19, *et seq.*,) in which, after discussing the cases of *Winter* v. *Winter*, and *Mower* v. *Orr*, (*supra*,) he distinctly decides, that it cannot make any difference whether or not the testator knew of the death of the devisee at the time of making the will, and that both cases are equally within the language and spirit of the Wills Act.

If therefore, it was the intention of the testator not to disinherit any of his heirs, or if the statute preventing lapse of legacies and devises, applies to this case, it follows that the decree of the surrogate must be affirmed.

*By the Court*, TALCOTT, J. The only point argued upon this appeal was, as to the right of the children of Calvin Huson, Jr., to take the share of the sum of $10.000, directed by the fifth clause of the will of Calvin Huson, to be divided among the testator's sons and daughters, (except Susan and Elizabeth, otherwise provided for,) in the proportions therein stated. In the same clause of the will, the testator directs certain deductions from certain shares, among others specifying that $800 are to be deducted from the share of Calvin, Jr. And the clause concludes with a provision, that the sums so to be deducted shall be divided equally among the heirs of the testator, and proceeds to mention by name the heirs intended, and specifies, among others, the name of Calvin, Jr.

The will bears date in May, 1869. Attached to it is a codicil without date, duly executed, the contents of which are not material to the question presented in this case.

Calvin Huson, Jr., died at Richmond, in Virginia, in October, 1861. At the time of making the will the testator had heard of the *reputed* death, at Richmond, of his son Calvin, Jr. The testator died in May, 1869, and his will was duly admitted to probate in August, 1869. It, therefore, appears that Calvin Huson, Jr., had, in fact,

died, and rumors to that effect had reached the testator, not only before the death of the testator, but before the making of the will. The respondents are the infant children of Calvin Huson, Jr., and appeared by their guardian. The surrogate has decreed that they are entitled, under the said fifth clause, to that share of the $10.000 therein bequeathed to which their father would have been entitled had he survived the testator. From this decree the executors, and some of the heirs at law of the testator, appeal.

The counsel for the respondents argues, not without force of reason and show of authority, that, under the circumstances of this case, the words, sons and daughters, must be held to include the respondents, who are the grand-sons and grand-daughters of the testator, as the word children, in a devise or bequest, is held to include grand-children, when necessary to carry into effect the clear intention of the testator.

We do not think it necessary to discuss that question, in this case, as we are of the opinion that the provisions of the statute which, in certain cases, prevents the lapse of a devise or bequest by reason of the death of the devisee or legatee prior to the death of the testator, meets this case. By the Revised Statutes, it is provided: "Whenever any estate, real or personal, shall be devised or bequeathed to a child, or other descendant of the testator, and such legatee or devisee shall die during the lifetime of the testator, such devise or legacy shall not lapse, but the property so devised or bequeathed shall vest in the surviving child, or other descendant, of the legatee or devisee, as if such legatee or devisee had survived the testator, and died intestate."

It is insisted by the counsel for the appellants that, from the collocation of the words in the section, the expression "shall die" can only be literally construed to refer to a

time intermediate the making of the will and the death of the testator.

To construe this statute with literal and technical accuracy, regardless of anything else, would abrogate it. " *Nemo est hœres viventis* " is a familiar maxim of law. If none can be the heir of a living person, certainly none can be his devisee or legatee. A will speaks from the death of the testator, and no person not then in existence can, strictly speaking, be either the devisee or legatee of such testator. Hence, if construed technically by its words alone, and without reference to its obvious intent and purpose, the entire provision would be rendered nugatory. Such a construction of this statute would deservedly fall within the condemnation of the principle often necessarily applied to the interpretation of statutes, " *qui haeret in littera hœeret in cortice.*"

Where the office of judicial interpretation of a statute is necessary, we are to consider not only the language of the legislature, but the mischief intended to be remedied. The harsh rule of the common law by which, in all cases, devises or bequests were wholly avoided where the intended devisee or legatee had died before the death of the testator, was attended, oftentimes, with unfortunate consequences, thwarting the beneficial intentions of a testator, and disappointing the just expectations of the natural claimants upon his bounty.

The testator might not have learned of the death of the proposed devisee, or through inadvertence or procrastination, have undesignedly omitted to alter his will to conform to the new circumstances. Such instances were of so frequent occurrence, and the consequences, in many instances, so unfortunate and remediless, that the legislature sought, to a certain extent, to remedy the evil. Where the proposed devisee or legatee, being a descendant of the testator, had died before the testator, leaving lineal descendants, who were, of course, equally the de-

scendants of the testator, the presumption was strong that, except from ignorance, inadvertence or accident, the will would have been so altered as to continue the designed provision in the line which had been intended. Therefore, the legislature designed to provide a remedy in such a case, against the consequences of such ignorance, inadvertence or accident, by enacting, that in case the proposed devisee or legatee, who had died before the testator, was a child, or other descendant, of the testator, then the issue of such proposed devisee or legatee should take in his place. No reason can be perceived for any different rule, whether the death happen before or after the making of the will; either occurrence is entirely within the mischief intended to be remedied.

In fact the circumstance that the death of a proposed legatee had occurred before the making of the will, would strengthen the presumption that the name of the deceased, as a legatee or devisee, was inserted through ignorance of the death, or by mistake. Besides, many wills are made upon the eve of the death of the testator, when the death of the beneficiary named may have been so recent that information of the fact could not have reached the testator, even though it had occurred under ordinary circumstances, and at no very remote distance, until it would be too late to remedy the accident. The construction of the statute contended for by the appellants' counsel would call upon us to hold that a devise or legacy to a child, contained in a will made *in extremis*, would lapse and be wholly avoided, if the child had died one hour before the making of the will, although such death was wholly unknown to the testator. Such a discrimination between the case of a death happening before the making of the will, and one happening after, is founded in no reason, and we cannot believe it to have been within the intention of the legislature.

Considering the evident purpose and policy of the act,

the mischief intended to be remedied, and the fact that it is a remedial statute, to be liberally construed, we are of the opinion that its meaning is to prevent the lapse of a devise, or bequest, to a descendant of the testator, although the proposed devisee or legatee shall have died before the testator; provided such devisee or legatee shall have left lineal descendants, who shall be living at the testator's death; and this, whether the death of the proposed devisee or legatee shall have occurred before or after the date or making of the will.

In the interpretation which we give to the statute in question, we are fortified by several recent decisions in the English chancery, upon the same precise question, presented under the 33d section of the English statute of Wills. (1 *Vict. ch.* 26, § 33.) The language of that section is, "that where any person, being a child or other issue of the testator, to whom any real or personal estate shall be devised or bequeathed, for any estate or interest not determinable at or before the death of such person, shall die in the lifetime of the testator, leaving issue, and such issue of such person shall be living at the time of the death of the testator, such devise or bequest shall not lapse, but shall take effect as if the death of such person had happened immediately after the death of the testator, unless a contrary intention shall appear by the will."

It will seen, from the language of this provision and the collocation of the words, that it gives rise to the same question, as to whether the expression "shall die," is not confined to a death intermediate the making of the will and the death of the testator, as that which is presented in this case. Upon the construction of this section in the English act, it has been several times held, that whether the death of the devisee occur before or after the making of the will, is of no importance. (*See Winter* v. *Winter,* 5 *Hare,* 306; *Mower* v. *Orr,* 7 *id.* 473; *Wisden* v. *Wisden,* 2 *Sm. & Giff.* 396; *Barkworth* v. *Young,* 4 *Drewey,* 1.)

In the case of *Winter* v. *Winter,* (*supra,*) Vice Chancellor Wigram, after discussing the policy and objects of the act, says : " The construction of the act, which alone will include all the cases which the act must presumably have been intended to include, is that which makes the time of the legatee's death unimportant, provided he died after the act came into operation, and the bequest to him is by a will made after that date ; and, as far as I can see, that construction cannot possibly include any case not obviously within the purpose of the act. * * * And if the construction of the act be that the words ' shall die,' mean shall die after the making of the bequest, I could not have come to my present conclusion. I think, however, the sound construction of the wills act is, that if the bequest be made after the act came into operation, the act will apply to a case where a child may have died before the will was made, but after the act came into operation."

In *Wisden* v. *Wisden,* Sir John Stuart, V. C., says : " I consider the words of the clause as meaning that any gift to any child, though not living at the testator's death, is within its operation ; and therefore I must construe the will as if the deceased child was alive when the will was written."

In the case at bar it was proved, or rather admitted, that the testator had heard, before the making of the will, that Calvin Jr. had died at Richmond. It is quite clear, nevertheless, from the express language of the clause of the will in question, that he intended to embrace Calvin Jr. among those who were to take under that clause. It was stated, on the argument, that Calvin Jr. died in a Confederate prison, as a prisoner of war. We all know the distressing uncertainty which has prevailed in regard to the ultimate fate of many of those who were thus circumstanced, and it is quite probable that the testator, while he had heard the rumor of his son's death, was not

satisfied of its authenticity; and it is not improbable that he relied upon the provisions of the statute which we have been discussing, to effectuate equal justice between and among his heirs, in case the rumored death of Calvin Jr. should prove to be true. However that may be, the evidence that he had heard of the death was wholly immaterial. The statute wisely leaves open no door for dispute on that subject, or for the introduction of such proof. This point has also been ruled under the English statute referred to, in the case of *Buckworth* v. *Young,* (*supra.*)

The decree of the surrogate must be affirmed, with costs of the appeal to the respondents. .

