IN THE MATTER OF THE ESTATE OF JEAN DARMAU DE
BERNEDE, ALIAS JEAN BERNEDE, DECEASED.

[No. 15,116; decided April 30, 1895.]

**Lapse of Legacy—Code Provisions.**—The common-law doctrine of
lapse or failure as applied to bequests or devises in case the bene-
ficiary predeceases the testator is preserved by section 1343 of the
Civil Code, as the general rule, with the special exception, under
section 1310, of avoidance in favor of "a child or other relation,"
provided he leaves "lineal descendants" who survive the testator.

**Lapse of Legacy.**—A Beneficiary Who is Dead at the making of a
will is within the provision of section 1310 of the Civil Code that
if a "devisee," who is a "relation," "dies before the testator," the
estate devised shall not lapse if the devisee leaves "lineal descend-
ants."

**Lapse of Legacy—Construction of Code.**—Although section 1310 of
the Civil Code, creating an exception to the doctrine of lapse in
favor of the testator's relation, refers to the latter as a "devisee,"
the statute applies to a testator who leaves personal estate only, and
includes legatees technically so designated as well as devisees.

**Lapse of Legacy.**—The Expression "Lineal Descendants" in section
1310 of the Civil Code means issue to the remotest degree, in which
sense it is used in the title on succession.

**Wills—Meaning of "Descendants."**—The natural and technical
meaning of "descendants" discussed with special reference to section
1334 of the Civil Code.

**Lapse of Legacy.**—Where a Testator Leaves All His Estate, consist-
ing solely of personalty, to his three sisters, who were at the time of
the execution of the will deceased, their children and grandchildren
may claim the estate under section 1310 of the Civil Code.

T. J. Lyons, attorney for the executor.

COFFEY, J.   Application by Edward J. Le Breton, as ex-
ecutor, for distribution to ten nephews and nieces and two
grandnephews and two grandnieces, all the "lineal descend-
ants" of three predeceased sisters, in accordance with the
provisions of the will or of the statute of distribution as the
court may determine to be the law in the premises.

The decedent left a will bequeathing all his estate to his
three sisters, naming them, "in equal parts."

The executor's petition alleged, and the proofs on the hear-
ing established, that at the date of the will all of testator's

three sisters were deceased, and had been dead from four to six years respectively, before the execution of the will.

The question, therefore, is whether "the testamentary disposition" to the three sisters fails or lapsed (Civ. Code, 1343), or whether the provisions of section 1310 of the Civil Code applies.

The section reads as follows:

"1310. When any estate is *devised* to any child *or other relation* of the testator, and the devisee dies before the testator, leaving lineal descendants, such descendants take all estate so given by the will, in the same manner as the *devisee* would have done, had he survived the testator."

(a) The section is a continuation of the statute of 1850, page 179, section 20: See Estate of Pfuelb, 48 Cal. 643, 644.

(b) This provision of our law is intended as an exception, in favor of "relations," to the well-known testamentary doctrine of lapse which is still preserved: Civ. Code, sec. 1343.

(c) Does the statute extend to the case of a disposition in favor of a "relation" who was dead at the time of the making of the will?

It has been held that such a case is not one of lapse, but of a devise void ab initio: Lindsay v. Pleasants, 4 Ired. Eq. (N. C.) 320, 322. See, also, 2 Woerner's Law of Administration, sec. 435, end of page 940.

The distinction as a matter of technical legal differentiation is appreciable (although Mr. Jarman does not mention it: Jarmain's Law of Wills, c. 11), but do the precedents or our statute uphold its legal consequences? It must be admitted that the strict grammatical reading of the language of our code would incline one to say that the words, viz., "and the devisee *dies* before the testator," implies the original existence of a *devisee* as well as a testator, which could not be predicated of one dead at the making of the will. But, on the other hand, it might be argued that as a will does not take effect until the death of the testator, the words of our code "dies before the testator" could properly be construed so as to include death at any time *"before* the testator." Indeed, this would seem to be the true theory of the "doctrine of lapse," as stated by that accepted authority, Mr. Jarman (1 Jarman

on Wills, star p. 338), who lays the foundation of his discussion upon the following statement: "The liability of a testamentary gift to failure by reason of the decease of its object in the testator's lifetime is a necessary consequence of the ambulatory nature of wills; which, not taking effect until the death of the testator, can communicate no benefit to persons who previously die; in like manner as a deed cannot operate in favor of those who are dead at the time of its execution."

Another consideration that must be attended to in the construction of this section is that its character is that of a remedial statute, as to which statutes the "mischief" previously existing and intended to be remedied is controlling in case of any doubt or ambiguity.

Statutes precisely similar have been so characterized and treated.

It is a matter of English juridical history that the doctrine of lapse, so far as it affected the immediate issue of a testator, was considered to be a disappointment of the testator's intention; that in all cases where a legacy or devise was made in favor of a child the testator naturally presumed, or would have expressly provided had the rule of law been called to his attention, that if that child should die before himself, leaving issue, such issue would stand in the parent's place.

To remedy this unwitting disappointment of testators was the purpose and object of such statutes as our section 1310, Civil Code; and even without the doctrine of remedial statutes (a rule superfluous in California, it would seem: Civ. Code, sec 4), our code gives the rule that "Its provisions are to be liberally construed with a view to effect its objects, and to promote justice": Civ. Code, sec. 4.

As to whether a child *in fact* died before or after the making of the will, no difference as to the *testator's intention* could be predicated in a case where the testator *supposed* that the child was living at the date of his will; a presumption that would have to be indulged, in the absence of evidence, from the mere fact of the express gift by the testator.

Our statute extends the doctrine to "a child *or other relation* of the testator"; and whatever intendments, legal or

natural, would be applicable in favor of a child, must also be applied in the case of every "other relation of the testator."

(d) Coming to precedents upon the express point raised in the case at bar, we find that their uniformity would overrule any hesitation that could arise if this were a case of novel impression.

Statutes in avoidance of the doctrine of lapse exist in most of the states of this country, some of them being more restricted than our Civil Code, section 1310, e. g., confining the rule to the case of legatees who are children or descendants; while others are broader than our code provision, and do not limit the rule to even a "relation," but extend it to all legatees and devisees: See 2 Woerner's Law of Administration, sec. 435, pp. 938, 940; 1 Jarman on Wills, Big. ed., star pp. 338, n. 1, and 351, n. 1; 2 Jarman on Wills, Rand. & T. ed., pp. 638, 639, in note; Hawkins on Wills, 2d Am. ed., star p. 68, in n. 2.

In Randolph and Talcott's American edition of Jarman on Wills, the editors state that the American statutes are a re-enactment of the Victorian statute of 1838; but this is not universally true, for the original statutes in Maine and Massachusetts were passed as early as the year 1784: See Nutter v. Vickery, 64 Me. 490.

In most, if not all, of these statutes the language presents the same grammatical peculiarity as our own statute, of apparently referring in the future tense to the death of the legatee or devisee, which we have discussed hereinbefore: See 60 Barb. 598; counsel's argument at pp. 605-607.

These statutes, and the various questions which have arisen under them, are succinctly but accurately set forth, with the notation of the reported cases, in the valuable and learned treatise of Judge Woerner, quoted above (2 Woerner's Law of Administration, sec. 435). And the precise point to be decided here is thus stated by the author (end of page 940): "Although the terms of the statute may refer to the death of the legatee after the making of a will, it is generally construed as including also cases where the legatee was dead at the time of its execution; but it is held in North Carolina that

a legacy to a person dead at the time of the execution of the will, being void ab initio, is not aided by the statute.''

American · cases only are cited by Mr. Woerner, but the English decisions under the Victorian act are to the same purport, as fully appears in the case hereinafter cited from the 60 Barbour; some of which English cases are also cited in the case to be referred to from the 64th Maine.

It will be sufficient to refer to two American cases upon the point, which are altogether satisfactory for the consideration of the subject exhibited in the careful opinions.

(1) Nutter v. Vickery, 64 Me. 490 (decided in 1874). This case expressly considers the legal distinction between void and lapsed legacies, which forms the sole basis of the North Carolina cases cited in Woerner (although they were not cited to the Maine court, semble).

The following is the entire opinion of the court (Barrows, J.), upon the question (page 498):

''We · are satisfied, upon reason, principle and authority, that the lineal descendants of a relative of the testator having a bequest in the will are entitled to the legacy given to their ancestor by virtue of R. S. C. 74, sec. 10, though the original legatee was in fact dead at the date of the will. The statute is in furtherance of what may fairly be presumed to have been the intention of the testator, and in order to effect its object it should be construed liberally, as remarked by Hubbard, J., in Paine v. Prentiss, 5 Met. 399. Any other interpretation of the statute, which has been the law of this state for nearly a century, we think would be liable to operate harshly, and adversely to the intent of the testator almost universally.

''The adverse argument is based upon the distinction between lapsed and void devises, and the assumption that the statute takes effect only in cases of lapse. But no such limitation of its effect is found in the statute, the intent of which obviously is to save to the lineal descendants of the person named as devisee in the will the benefit of a devise which would at the common law fail of effect by reason of the death of the original devisee before the testator. The statute has

regard rather to the class of individuals for whose relief it is interposed than to any technical distinction in the manner of the failure against which it proposes to guard them. As to them the result at the common law would be the same whether their ancestor died before or after the date of the will, if he died before the death of the testator. Against this result, in either case, the statute places a barrier. Our conclusion is in unison with those authorities to which our attention has been called: Minter's Appeal, 40 Pa. 111; Winter v. Winter, 5 Hare, 306; Mower v. Orr, 7 Hare, 473.''

(2) Barnes v. Hudson, 60 Barb. 598 (decided November, 1871).

This case was well argued, and the whole question exhaustively treated upon reason and authority by the court; nothing was apparently left unsaid, e. g., the argument based upon the grammatical form of the statute being opposed by the court upon various satisfactory grounds and legal propositions (see pages 612-615).

The syllabus reproduces the opinion of Tallcott, J., so well that we copy it entire, viz.:

''Considering the evident purpose and policy of section 52 of the statute of wills (2 R. S. 66), the mischief intended to be remedied, and the fact that it is a remedial statute, to be liberally construed, its meaning is to prevent the lapse of a devise or bequest to a descendant of the testator, although the proposed devisee or legatee shall have died before the testator; provided such legatee or devisee shall have left lineal descendants who shall be living at the testator's death; and this whether the death of the proposed devisee or legatee shall have occurred before or after the date or making of the will.

''This interpretation is fortified by several decisions in the English court of chancery upon the construction of the section of the English statute of wills (1 Victoria, c. 26, sec. 33), in which it has been held that whether the death of the devisee occur before or after the making of the will is of no importance.

''In such a case evidence that the testator had heard a rumor of the death of one of his children, before the making of the will, is wholly immaterial. The statute leaves open no

door for dispute on that subject, or for the introduction of such proof.

"The words 'shall die' in section 52 of our statute, is not to be construed as referring to a time intermediate the making of the will and the death of the testator."

The two following propositions taken from the foregoing two cases cited from Maine and New York, seem peculiarly satisfactory, viz.:

"The statute has regard rather to the class of individuals for whose relief it is interposed than to any technical distinction in the manner of the failure against which it proposes to guard them": 64 Me. 490, at p. 498.

"I consider the words of the clause as meaning that any gift to any child ["or other relation"], though not living at the testator's death, is within its operation; and therefore I must construe the will as if the deceased child was alive when the will was written": 60 Barb. 598, at p. 516, quoting Sir John Stuart, V. C., in Wisden v. Wisden, 2 Smale & G. 396.

Some other questions are involved in the case at bar, arising upon the special words "devisee" and "descendants," used in the section.

(a) In this case the entire property of the testator was personalty, and the beneficiaries named in the will would in technical legal language be designated as "legatees." But Civil Code, section 1310, speaks of the testamentary beneficiary as a "devisee," which is the technical term applied to a donee of real estate.

This verbal peculiarity of our statute is noted by Mr. Woerner, in the work and place above cited (2 Woerner's Administration, sec. 435, p. 938), who says: "But there seems to be no doubt that *legatees* are likewise included"; citing Estate of Pfuelb, 48 Cal. 643.

In that case the question on appeal and the court's opinion were solely to the legal extent of the word "relation" used in the section. But the subject matter of the appeal concerned a legacy of money only, and therefore the application of the section to both legacies and devises was involved, although the report of the case does not show, nor does the opinion, that any question was raised as to this point.

The statement and citation of Mr. Woerner upon this point serve to show his thorough research and the accuracy of his valuable treatise, for the syllabus in Estate of Pfuelb does not indicate the point, by expression or implication.

It is to be noted that Civil Code, section 1343, which preserves the doctrine of lapse as to strangers, and which expressly refers to Civil Code, 1310, contains both words "devisee" and "legatee."

(b) Some suggestions may be indicated as to the expression "lineal descendants" appearing in the section, although no contest as to this is made in the case at bar.

The word "descendants" was held (Jewell v. Jewell, 28 Cal. 232) to mean *issue* "to the remotest degree," and *not to mean* those "persons entitled to take by descent" (page 237). Curiously enough, section 1334 of the Civil Code, in its attempt or desire to abolish the "rule in Shelley's case," in force previous to the adoption of the codes, provides that "a testamentary disposition" to "descendants" shall be ruled contrary to Jewell v. Jewell—that is, *it shall mean* those "persons entitled to take by descent."

The special statute construed in Jewell v. Jewell was carried into Civil Code, section 1402, with the modification as to "descendants" that they take per capita, if in the same degree of kindred, otherwise per stirpes; which appears to be the *general* rule as to "descendants" by "*succession*": Civ. Code, 1403; also sec. 1386, subd. 1. Section 1310, Civil Code, makes no modification of "descendants" (there called "lineal descendants"—also used in Civil Code, sec. 1386, subd. 1, 1395, 1399), which would therefore prima facie bear the construction that "descendants" are designated as a class, in which case the per capita rule would apply (De Laurencel v. De Boom, 67 Cal. 362, at p. 364, [7 Pac. 758], end of opinion) unless the provisions of section 1310, Civil Code, in favor of "descendants" be considered as a "testamentary disposition" within the meaning and rule of Civil Code, 1334, above referred to, *and* provided that the latter statute treats "descendants" other than as a class.

Indeed, by our code, the word "descendants" is placed in a curious position. By lay people it is naturally understood

as it has always been treated in legal nomenclature as "those who have issued from an individual," namely, "children, grandchildren and issue to the remotest degree" (Jewell v. Jewell, 28 Cal. 232, 236, and note; Civ. Code, secs. 13, 1317, 1327). But section 1334, Civil Code, says that it, as well as the legal synonym "issue," shall mean "those who would be entitled to succeed" in intestacy, which would not only include collaterals, but likewise those not of kin, namely, a surviving husband or wife. Yet the "Title of Succession," referred to by Civil Code, 1334, as the charter of interpretation, does not in speaking of "descendants" change the meaning of that word, but, on the contrary, expressly affirms its meaning as issue, without degree (Civ. Code, 1386, subd. 1, 1390, 1392, 1395, 1399, 1401, 1403, and Civ. Code, sec. 1309) ; and note, e. g., section 1403, Civil Code of that title, as to "inheritance" per stirpes, the language "descendants of any deceased heir" (meaning pre-"deceased heir").

So, that we have the apparent rule, that under our statute of wills the word "descendants" *does not mean descendants,* whereas, under our statute of succession, "descendants" means precisely what the natural and legal import of the word implies; or, to express it in another manner, in law and in legal nomenclature the word "descendants" shall have its meaning, but in a will or in testamentary nomenclature it shall not have its meaning.

But a question may well be raised whether section 1310, Civil Code, although a part of our statute of wills, is subject to or within the terms of section 1334, Civil Code. The latter section only applies to "a testamentary disposition," but in view of the extraordinary perversion of the otherwise unequivocal expressions "issue" and "descendants" which would result if it were taken as a general rule, the section, it seems, should be confined to cases involving the mischief it was intended to remedy, namely, wills worded like the one in Norris v. Hensley, 27 Cal. 439, formerly controlled by the "Rule in Shelley's Case": See Commissioner's Annotated Code, Civ. Code, 1334. In such cases the words "issue" and "descendants" might well be construed as meaning "heirs" (e. g., I give my property to A to be used for his life, and

after him to go to his issue—or to his descendants—or to his heirs: in gifts of this peculiar form, it might well be that "issue," "descendants" and "heirs" convey the same meaning, and by such collocation import *legal successorship,* purely: See Civ. Code, 779).

Apart from this, it is questionable whether section 1310 could be taken as a "testamentary disposition" in favor of the "lineal descendants" therein provided for. They take by the beneficence of the law, solely, and the provisions of section 1310 are in strictness and accurate designation a *statutory* "disposition."

It appears that the character in which "such descendants" take under these statutes has been the subject of discussion in many cases; whether as substitutes, or successors, or directly as if they were the original devisees or legatees: See Woerner's Law of Administration, sec. 435.

(c) Another suggestion as to "descendants," which might assume importance in cases where they were not all in the same degree of kindred, was that mentioned above, passim, namely, whether they take as a class—in which case each member of the class takes for himself—or as heirs are in all cases treated in the civil law, per stirpes.

We have called attention to the sections bearing on this (Civ. Code, 1386, subd. 1, 1402, 1403), all under "Succession."

These provisions show that we have adopted the civil law doctrine of per stirpes only in cases of "descendants"—direct heirs; in the case of collateral heirship, "representation" stops with the nonsurvivorship of brothers or sisters: Civ. Code, 1386, subd. 6.

On the other hand, we have the common-law rule that in the absence of a statute to the contrary, a gift or disposition to or a right in favor of a number of persons without qualification must be shared equally: De Laurencel v. De Boom, above; although the rights vested in 1870. And note Civ. Code, sec. 1387.

How the "descendants" take under section 1310, Civil Code, must depend upon the true construction of the character of their rights under that statute, and whether that

section should be construed in view of the character of "descendants" under the succession statute; the suggestions and citations we have hereinabove made furnishing, perhaps, the data for a correct determination.

The case at bar, although apparently simple, by its few facts, provoked and involved all the questions discussed herein, except that a decision upon the special question as to "descendants" last referred to, was avoided, inasmuch as no contest was made with respect to the proportionate rights of the "descendants" in this case as claimed in their proofs of heirship.

The facts here were peculiar in that the "descendants" were the lineal heirs of the three families who would have constituted the ancestry in case of an intestacy, but as four of the eight "descendants" of one of the predeceased legatees were not of the same degree of kinship as the others, they would not have taken if the statute of distribution was to rule the case. To exemplify: The three sisters named for the whole estate in decedent's will would have been his sole heirs, had he died intestate, and had they survived him; they left the "descendants" herein claiming, all children except four who are grandchildren. These descendants would be the *heirs of the three sisters* under our statute (Civ. Code, 1386, subd. 1); but if claiming as *heirs to the testator herein,* their uncle and granduncle, respectively, the four grandchildren must be excluded, because not "next of kin in equal degree" with the children: Civ. Code, 1386, subd. 6.

In the above-entitled matter the petition of Edward J. Le Breton, as executor of the last will of the above-named decedent, praying for the final distribution of the above-named estate to the persons hereinafter named as distributees, in accordance with the last will of decedent, or otherwise in accordance with law in the premises as might be determined by the court, having come on regularly to be heard, upon due notice in the premises first given as required by law and the order of the court, and proofs oral and documentary having been submitted, and the question of law stated in the petition for distribution having been presented to the court, and fully

argued by Timothy J. Lyons, the counsel for petitioner, in accordance with the request of the court; and the matter having been finally submitted to the court for decision, now, after due consideration in the premises, the court finds and adjudges as follows:

1. That all and singular the allegations of said petition for distribution are true and correct.

2. That in and by the last will of the above-named decedent, duly probated herein, all the estate, which consisted solely of personalty, is bequeathed "in equal parts" to his three sisters, hereinafter named. That said sisters were all dead at and long prior to the making of said will; but that they left "lineal descendants" who survived the testator, to wit, the distributees hereinafter named.

3. That the question submitted by the executor's counsel, in the Executor's Petition for Distribution aforesaid, viz.: Whether, by reason of the nonexistence of the three sisters at the making of the will, the distribution of testator's estate should be made in accordance with the said last will, and the provisions of section 1310 of the Civil Code to be applied thereto, or whether the distribution should rather be made as if the decedent had died intestate, is hereby determined by the court as follows: The rule for distribution herein is determinable and to be determined by the aforesaid provisions of the last will of decedent, together with the provisions of section 1310 of the Civil Code of this state, as applicable and to be applied thereto.

4. That therefore, in accordance with the will, the estate is to be divided into three equal parts, and that distribution thereof shall be awarded in accordance with the provisions of section 1310 of the Civil Code, to the descendants of the said three sisters, to wit: One part to and among the descendants of each sister.

5. That the residue of the estate according to the Executor's Final Account, settled herein, consisted solely of the sum of $2,398.72 in money, from which there should be deducted the sum of $50 hereby allowed the executor for fees of attorney in obtaining distribution and the proceedings thereon, and the sum of $5.72 as clerk's fees herein, leaving the amounts of

distributable assets to be $2,343, upon which there exists a tax of five per cent as provided for by the statute in such cases made and provided (Stats. 1893, c. 168), amounting to $117.15, hereby ordered paid by the executor to the treasurer of the city and county of·San Francisco, making. the net distributable residue to consist of the total sum of $2,225.85.

It is therefore ordered, adjudged and decreed that the payments above ordered be made by the executor, and that the said residue of $2,225.85 be and is distributed 'as follows:

(1) To the descendants of the deceased sister and legatee Dominiquette, widow of Louis Raymond Fabares, namely: to Cyrilee J. M. Fabares and Lucien J. M. Fabares, each onesixth (⅙), to wit, each, $370.97.

(2) To the descendants of the deceased sister and legatee, Marie Jeanne Davaze, namely to Felice Davaze Vilieneuve and Marie M. Davaze Dintrans, and Eliza Davase Dintrans, and Marie P. C. Davaze, widow Dutour, each one-twelfth (1/12), to wit, each, $185.49.

(3) To the descendants of the deceased sister and legatee, Catherine, widow Laran, namely, to Jean Laran, Clementine Laran, widow Duponts, Julie Laran, widow Rouge and Jean Marie Laran, each one-fifteenth (1/15), to wit, each, $148.39, and to Marie Laran, Pierre Laran, Francoise . Laran and Catherine Laran, the surviving children, all minors, of Edouard Laran, deceased, each, one-sixtieth (1/60), to wit, each, $37.09; which payments to said minors, the said executor, Edward J. Le Breton, is authorized to make to their guardian, and the receipt of said guardian will entitle said executor to a discharge herein.

---

**If a Devisee or Legatee Dies** during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute some other in his place, except that if he is a child or other relative of the testator and leaves lineal descendants, the gift goes to them. This rule, with some variations in the different states, and also with modifications in favor of interests in remainder, is declared by statute. The word "relative" or "relation," as employed by the statutes in this connection, has been construed to include only relatives by blood, and to exclude a stepson and also a wife. The California Civil Code, as originally enacted, made no mention of "legatees" in the exception in favor of relatives leaving

lineal descendants, but used only the word "devisee," and the supreme court of the state reached the conclusion that "legatees" were therefore not within the purview of the statute. The legislature has since amended the statute, however, so as expressly to embrace legatees as well as devisees, in accordance with the De Bernede case above. In some states the restrictive wording of the statutes remains unchanged, so that there is a possibility in those jurisdictions of the courts adopting the narrow interpretation placed by the supreme court of California on the statutes of that state before the legislature made known its intention in language unmistakable: 1 Ross on Probate Law and Practice, 111.