HANNAH A. KEHL, Appellee, *vs.* CYNTHIA R. B. TAYLOR *et al.*—(NANCY BELLE LEINWEBER, Appellant.)

*Opinion filed October 24, 1916—Rehearing denied Dec. 7, 1916.*

1. WILLS—*section 11 of the Statute of Descent applies to devises to children as a class as well as by name.* Section 11 of the Statute of Descent, providing that whenever a devisee or legatee, being a child or grandchild of the testator, shall die before the testator and no provision shall be made for such contingency, the issue, if any, of the deceased child or grandchild shall take the devise intended for the deceased devisee or legatee, applies to devises to children as a class as well as by name.

2. SAME—*section 11 of the Statute of Descent applies though devisee dies before the making of the will.* Section 11 of the Statute of Descent, providing for the contingency of the death, before the testator, of a devisee who is a child or grandchild of the testator, applies to a devise to his children as a class, even though one of them was dead when the will was made, and in such case the issue of the deceased child will take the parent's share, if no contrary intention appears in the will.

3. SAME—*common law rule prevails where devisee is not child or grandchild.* At common law a bequest or devise by will to one who was dead when the will was made was void, and a bequest or devise to one who died after the will was made and before the death of the testator, lapsed; and these rules prevail except as provided by section 11 of the Statute of Descent, which saves the devise or bequest if the deceased devisee or legatee is a child or grandchild of the testator.

4. SAME—*testator's knowledge of death of devisee not essential to operation of section 11 of Statute of Descent.* Section 11 of the Statute of Descent, giving to the issue of a deceased child or grandchild who died before the testator the devise intended for such child or grandchild, does not make the testator's knowledge or want of knowledge of the death of such devisee a condition to its operation.

5. STATUTES—*how intention of legislature is to be ascertained in construing statutes.* In construing statutes the vital thing is to ascertain and give effect to the intention of the legislature, and this intention is to be gathered not only from the language used, but also from the reason and necessity for the enactment, the evils sought to be remedied and the objects to be attained by it.

APPEAL from the Circuit Court of Mason county; the Hon. GUY R. WILLIAMS, Judge, presiding.

LYMAN LACEY, JR., for appellant.

W. A. COVEY, for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Appellee filed her bill for partition in the circuit court of Mason county, alleging, among other things, that she and her sister, Cynthia R. B. Taylor, who was made a defendant to the bill, were the owners of lot 5 and the east half of lots 6 and 7, in block 18, in the city of Mason City, in that county, as tenants in common in equal parts by reason of the third clause of the will of William M. Miller, father of the complainant and the defendant Cynthia R. B. Taylor; that an uncertainty existed as to the meaning of the words "my children," occurring in that clause; that Nancy Belle Leinweber, a grand-daughter of the said William M. Miller, claimed an interest in the property under said clause; that such claim created a cloud on the title, and praying for the removal of said cloud and partition between the complainant and the defendant Cynthia R. B. Taylor. Nancy Belle Leinweber answered, claiming that upon a proper construction of the will of William M. Miller she is the owner in fee of an undivided one-third of the premises in controversy. Cynthia R. B. Taylor was defaulted. The complainant replied to the answer of Nancy Belle Leinweber, and the cause was referred to the master in chancery to take the proofs. The master took and reported the evidence and the court rendered a decree in accordance with the prayer of the bill, which finds that the complainant, Hannah A. Kehl, and the defendant Cynthia R. B. Taylor, were the owners of the property in controversy and decrees partition between them, and further decrees that the defendant Nancy Belle

Leinweber had no interest in said property. Said defendant has appealed, and assigns as error the action of the court in entering a decree in favor of appellee.

It appears from the evidence taken in the cause that William M. Miller died testate March 16, 1894, seized and possessed of the above described real estate and of certain other property mentioned in his will which is not involved in this suit. The will is dated March 29, 1888. In all, five children were born to the testator, three of whom died prior to the making of the will in question. Two of the children, Vilura Langley and Josie L. Miller, died intestate, leaving no child or children or descendants thereof. The third, Nancy Belle Walton, died August 19, 1886, leaving her surviving a daughter, Nancy Belle Walton, (now Leinweber,) the appellant in this case. The wife of the testator, Nancy J. Miller, and two daughters, Mrs. Kehl and Mrs. Taylor, survived him and were living when the will was made. Nancy J. Miller has since died.

The sole question involved in this appeal is the right of Nancy Belle Leinweber to take the portion her mother would have taken under the third clause of the will had she survived the testator or died after the making of the will. Appellant insists that she is entitled to take such portion by virtue of the provisions of section 11 of the Statute of Descent, while appellee contends the provisions of that section have no application to a case in which the death of the child occurred prior to the making of the will and was known to the testator at the time the will was made, and that in any event, taking the will as a whole, it is clear the testator did not intend to include his grandchild as one of his "children," as that word is used in the third clause of his will.

By the first clause of his will the testator directed that his widow pay all his debts out of his personal estate which he bequeathed to her. By the second clause he gave to his wife, in case she survived him, 80 acres of land in Mason

county for life, remainder at her death to his grandchild, Nancy Belle Walton, (now Nancy Belle Leinweber,) for life, with remainder to her children in fee, with the provision that should she die leaving no child, children or descendants of a child or children, the land should descend to his heirs-at-law in fee simple absolute, and in case his widow should die before the said grandchild arrived at the age of twenty-one years, the real estate devised to the latter was to be committed to the care of some competent person, other than her father, until the grandchild attained such age. The third clause is as follows:

"*Third*—I give, devise and bequeath unto my beloved wife, Nancy J. Miller, lot 5 and the east half of lots 6 and 7, in block No. 18, in the original town or plat of the city of Mason City, in Mason county, State of Illinois, for and during her natural life and at her death to my children in fee simple absolutely, share and share alike. I also give unto my wife all my personal property of every description, notes, bonds, due bill, accounts and debts due and owing to me and all moneys of which I may die seized or possessed; also the rents of all my real estate for the first two years after my death, which I make a charge on my said real estate, the said rents to be fixed by agreement between my widow and the devisees mentioned herein."

By the fourth clause he gave to his daughter Cynthia R. B. Taylor 107½ acres of land in Mason county for life, remainder to her children in fee simple absolute, with the further provision that in case she died leaving no child, children or descendants of a child or children, the same should go to her husband for life, with remainder to the heirs-at-law of the testator. By the fifth clause he gave to his daughter Hannah A. Kehl 147½ acres of land for her life, with remainder to her children in fee simple absolute, with the further provision that in case she died leaving no child, children or descendants of a child or children, the same should go to her husband for life, with remainder to

the testator's heirs-at-law in fee simple absolute. By a codicil made December 7, 1891, he specifically refers to the provision in the third clause of the will wherein he gave his wife the rents from all his real estate for the first two years after his death, and directs that his two daughters, Cynthia R. B. Taylor and Hannah A. Kehl, shall each, respectively, pay to his wife, should she survive him, the sum of $150,—$300 in all,—each year during her natural life, and makes the same a charge upon the real estate respectively devised to them by his will.

Section 11 of the Statute of Descent, relied upon by appellant, is as follows: "Whenever a devisee or legatee in any last will and testament, being a child or grandchild of the testator, shall die before such testator, and no provision shall be made for such contingency, the issue, if any there be, of such devisee or legatee, shall take the estate devised or bequeathed as the devisee or legatee would have done had he survived the testator, and if there be no such issue at the time of the death of such testator, the estate disposed of by such devise or legacy shall be considered and treated in all respects as intestate estate." This section was adopted in the revision of the laws in 1872, without substantial change, from the Wills act of the statutes of 1845, (Rev. Stat. 1845, chap. 119, sec. 14,) and whenever the same has been before this court it has been held to apply to gifts and devises to children as a class, as well as to gifts and devises to a child or children by name. (*Rudolph* v. *Rudolph,* 207 Ill. 266; *Pirrung* v. *Pirrung,* 228 id. 441; *Burlet* v. *Burlet,* 246 id. 563.) In the present case the devise in the third clause is to "children" of the testator as a class, and no provision is made in the will for the contingency of the death of any of such children before the death of the testator. If the provisions of this section of the statute apply to the death of devisees or legatees occurring prior to the making of the will as well as to the death of those occurring during the interim between the making of the will and the death

of the testator, appellant is entitled to her mother's share of the property devised by the third clause of the will, by virtue of the provisions of this section of the statute.

This question is a new one in the State. Similar questions have arisen in other jurisdictions and the decisions on the subject have not been uniform. In some it has been held that the time of the death of the legatee or devisee is unimportant so long as it occurred during the lifetime of the testator, while in others it has been held that such death must have occurred during the interim between the making of the will and the death of the testator in order that the issue of the devisee or legatee may take. (*In re Nicholson's Estate*, 115 Iowa, 483; *Pimel* v. *Beljemann*, 183 N. Y. 194, and cases cited in the opinions.) In those cases it was held that when the devise was to a class, a statute similar to ours would not apply where a member of the class had died before the will was made. To the same effect are *Howland* v. *Slade*, 155 Mass. 415; 29 N. E. Rep. 631; *Almy* v. *Jones*, 17 R. I. 265; 12 L. R. A. 414; 21 Atl. Rep. 616; *Billingsby* v. *Tongue*, 9 Md. 575. The decisions in *In re Nicholson's Estate* and *Pimel* v. *Beljemann* lose much of their force as authority in this State under the uniform holdings of our court above cited, that the statute applies to gifts to children as a class as well as to gifts to them by name. In the following cases, in construing similar statutes, the legatees died before the will was made, but it was held that the children of such legatees took what such legatees would have taken had they survived the testator: *Nutter* v. *Vickery*, 64 Me. 490; *Bray* v. *Pullen*, 84 id. 185; 24 Atl. Rep. 811; *Minter's Appeal*, 40 Pa. 111; *Bradley's Estate*, 166 id. 300; 31 Atl. Rep. 96; *Wildberger* v. *Cheek*, 94 Va. 517; 27 S. E. Rep. 441; *Jamison* v. *Hay*, 46 Mo. 546; *Mower* v. *Orr*, 7 Hare, 473; *Winter* v. *Winter*, 5 id. 306; *Barkworth* v. *Young*, 4 Drew, 1; *Wisden* v. *Wisden*, 2 Smale & G. 404.

Without reviewing the various decisions on this question and the reasons given to sustain the conclusions there reached, we think the construction most in harmony with both the spirit and intention of the act as well as the policy of our law is that which allows all devisees or legatees of the class named in the statute to take, irrespective of the time of their death, either before or after the time of the execution of the will, so long as their death occurred prior to that of the testator, leaving issue, and no provision is made for such contingency. Justice and equity would seem to require that all children, in the absence of special circumstances, should inherit equally from their parents, and that in case of the death of one or more of them their children should take the portion which their deceased parent would have taken had he or she survived the testator, and such is the policy of our laws of descent. The law under which appellant claims is a part of the laws of descent in this State. There are other provisions of the same law which were enacted for the benefit of the wives and children of decedents, such as section 10, which provides that where a child is born to a testator after making a will and no provision is made in the will for such child, unless it shall appear that it was the intention of the testator to disinherit such child, the devises and legacies given by such will shall be abated in proportion to raise a portion for such child equal to what he would have received had the testator died intestate, and the further provision that a marriage shall be deemed a revocation of a prior will.

Under the harsh rule of the common law all gifts and devises were avoided by the death of the devisee or legatee before that of the testator. At common law a bequest or devise by will to a child of the testator who was dead when the will was made was void, and a bequest or devise to a child who died after the will was made and before the testator, lapsed; and such rules would prevail in this State but for the statute in question, and do prevail where the

beneficiaries are other than children or grandchildren. This must often have thwarted the intention of the testator and worked a hardship upon those who were the natural beneficiaries of his bounty when it is considered that wills were frequently made *in extremis,*—but a few days, or even hours, before the testator's death, and at a time when it could not be known to a certainty, or ascertained, whether or not all the devisees or legatees, in case they were numerous and widely scattered, were alive and in being at the time of the execution of a will. It was to provide against such contingencies that this statute was enacted. It does not, in direct terms or by implication, take any notice of the time of the execution of the will or impose as a condition to its operation or non-operation upon a gift or devise that the devisee or legatee shall be *in esse* at the date of the execution of the will. The only conditions imposed by it are, that the devisee or legatee shall die before the testator, leaving issue surviving the testator, and that no provision shall be made in the will for the contingency of the death of such devisee or legatee before that of the testator. The words "shall die" refer not to the time of the execution of the will but to the death of the devisee or legatee before the testator, and, we think, include those whose death occurred prior to the execution of the will as well as those whose death occurred in the interim between the making of the will and the death of the testator.

In construing statutes and arriving at the proper construction to be given them the vital thing is to ascertain and give effect to the intention of the legislature in enacting them. This intention is to be gathered not only from the language used but also from the reason and necessity for the enactment, the evils sought to be remedied and the objects and purposes to be attained by it. *People* v. *Henning Co.* 260 Ill. 554; *Hoyne* v. *Danisch,* 264 id. 467; *Warner* v. *King,* 267 id. 82.

In *Barnes* v. *Huson*, 60 Barb. 598, the court construed a similar statute of the State of New York, which was as follows: "Whenever any estate, real or personal, shall be devised or bequeathed to a child or other descendant of the testator, and such legatee or devisee shall die during the lifetime of the testator, such devise or legacy shall not lapse, but the property so devised or bequeathed shall vest in the surviving child or other descendants of the legatee or devisee as if such legatee or devisee had survived the testator and died intestate." In the opinion in that case the court said: "It is insisted by counsel for appellants that from the collection of words in the section, the expression 'shall die' can only be literally construed to refer to a time intermediate the making of the will and the death of the testator. To construe this statute with literal and technical accuracy, regardless of anything else, would abrogate it. *Nemo est hæres viventis* is a familiar maxim of law. If none can be the heir of a living person none can be his devisee or legatee. A will speaks from the death of the testator, and no person not then in existence can, strictly speaking, be either the devisee or legatee of such testator. Hence, if construed technically by its words, alone, and without reference to its obvious intent and purpose, the entire provision would be rendered nugatory. Such a construction of the statute would deservedly fall within the condemnation of the principle often necessarily applied to the interpretation of the statutes: *Qui hæret in litera, hæret in cortice.* \* \* \* The construction of the statute contended for by the appellants' counsel would call upon us to hold that a devise or legacy to a child contained in a will made *in extremis* would lapse and be wholly avoided if the child had died one hour before the making of the will, although such death was wholly unknown to the testator. Such a discrimination between the case of a death happening before the making of the will and one happening after is founded in no reason, and we cannot believe it to have been within the

intention of the legislature. Considering the evident purpose and policy of the act, the mischief intended to be remedied and the fact that it is a remedial statute, to be liberally construed, we are of the opinion that its meaning is to prevent the lapse of a devise or bequest to a descendant of the testator although the proposed devisee or legatee shall have died before the testator, provided such devisee or legatee shall have left lineal descendants who shall be living at the testator's death,—and this whether the death of the proposed devisee or legatee shall have occurred before or after the date or making of the will."

The act of the British parliament passed in 1837, which was followed by similar enactments in most of the American States, provides: "Where any person, being a child or other issue of the testator, to whom any real or personal estate shall be devised or bequeathed, for any estate or interest not determinable at or before the death of such person, shall die in the lifetime of the testator, leaving issue, and such issue of such person shall be living at the time of the death of the testator, such devise or bequest shall not lapse but shall take effect as if the death of such person had happened immediately after the death of the testator, unless a contrary intention shall appear by the will." (1 Vic. chap. 26, sec. 33.) The English courts, in construing this act, have held that the act applied to prevent a lapse of the devise or bequest if the devise were to a child or issue of the testator, whether such child died before or after the making of the will, if such death and the making of the will occurred after the passage of the act and in the lifetime of the testator. *Mower* v. *Orr, supra; Winter* v. *Winter, supra; Barkworth* v. *Young, supra; Wisden* v. *Wisden, supra.*

In the *Barnes case* the will was made in 1869. The son of the testator who was mentioned in the will and in behalf of whose children the statute was invoked and held to apply had died in 1861, and the testator, his father, had

heard of his death as a prisoner of war in Richmond, Virginia. This case was not overruled by the later case of *Pimel* v. *Beljemann,* and, as before stated, that case held that there was a distinction between a devise to one by name who was dead when the will was made and a devise to children as a class, one of whom was dead when the will was made. As stated in the majority opinion in that case: "The provision of this statute applies to a case where a legacy is given to a person dead at the time of making the will. Indeed, I find but two jurisdictions (Rhode Island and Maryland) in which a contrary rule obtains. (*Almy* v. *Jones,* 17 R. I. 265; *Billingsby* v. *Tongue,* 9 Md. 575.)  *  *  * All the case of *Barnes* v. *Huson,* 60 Barb. 598, in the Supreme Court of this State, decides is, that where a legacy or devise is given to a dead child in express terms, the legacy, under the statute, is not void nor does it lapse, but goes to the issue of the child. This is simply what I have said is the rule in most jurisdictions."

Considering the evident purpose and policy of the act under consideration, the mischief intended to be remedied and that it is a remedial statute and to be liberally construed, we think its intention is to prevent the lapse of a devise or bequest to a child or grandchild of the testator who shall have died before the testator, leaving issue who shall be living at the testator's death,—and this whether the death of the proposed devisee or legatee shall have occurred before or after the date of making the will; for if it would not include a child or children whose death had occurred a few months or years before the execution of the will and whose death was unknown to the testator, it could not include one who died a few hours or a few days before the execution of the will and whose death was unknown to the testator at such time. The intention of the testator would often be defeated because of the occurrence of a fact of which he had no knowledge and there would be no relief against the harsh rule of the common law by the enactment.

On the other hand, if it would include a child or children whose death had occurred prior to the execution of the will and whose death was unknown to the testator at the time of making his will, we can see no reason why it should not also include a child or children whose death was known to the testator at the time of executing his will, as the statute does not make knowledge or want of knowledge of such fact on the part of the testator a condition to its operation or non-operation upon wills made after its adoption. The language is broad enough to include all children born to the testator, no matter what the time of their death with respect to the date of the execution of the will, and we think was intended to include all such children.

All men are presumed to know the law and make their wills with its essential provisions in view. In the instant case the evidence shows that the testator knew that his daughter Nancy Belle Walton was dead at the time he made his will and he made a specific devise to her child, the appellant in this case. He also made specific devises to his two surviving children, describing them by name and calling them his beloved daughters. The same course was also pursued in the codicil, made some years after the will was executed. We are not advised by the record of the value of the several tracts of land devised by the will, but the testator made a division of his property among his living children and the daughter of his deceased child, and, so far as we are able to see from the language of the will, it was the intention of the testator that his children and the issue of deceased children should all share in the division of his estate, the descendants of a deceased child or children taking their parent's share.

The gifts and devises made in the third clause of the will are to the testator's children as a class, and no distinction is made between those that are living and those that have pre-deceased him or provision for the contingency of the death of any child of the testator before his death. Had

appellant's mother survived the making of the will and died in the interim between that time and the death of the testator there would be no question of appellant's right to take her mother's share under the provisions of section 11 of the Descent act. (*Rudolph* v. *Rudolph, supra.*) As the will makes no provision for the contingency of the death of any such legatees during the lifetime of the testator, appellant's rights in the premises are governed by the provisions of section 11 of the statute, *supra,* and not by the sense in which the word "children" is used in the will, and it is therefore unnecessary to consider whether or not, if it were not for the provisions of the statute, it would have included grandchildren as well as the living children of the testator.

For the reasons given, the decree of the circuit court will be reversed and the cause remanded to that court for further proceedings in accordance with the views herein expressed.          *Reversed and remanded.*