(No. 13118.—Reversed and remanded.)

R. R. FOWLER, State's Attorney, Defendant in Error, *vs.* THE JOHNSTON CITY AND BIG MUDDY COAL AND MINING COMPANY, Plaintiff in Error.

*Opinion filed April 21, 1920.*

1. STATUTES—*what should be considered in ascertaining intention of legislature.* The principal object in construing a statute is to ascertain and give effect to the intention of the legislature, and that intention is to be gathered not only from the language of the act, but also from considering the reason, necessity and purpose of the enactment and the evil to be remedied, together with the pre-existing laws on the subject and any changes therein.

2. SAME—*statute should be construed so as to give effect to its ordinary meaning.* A statute should be so construed, if possible, as to give to each phrase and word its ordinary and accepted meaning.

3. SAME—*construction of laws passed in compliance with mandate of constitution.* Laws passed in compliance with a provision of the constitution should receive a liberal construction to the end that the mandate of the constitution be carried out, but where such a law is unambiguous the courts cannot say that the legislature intended a different law; nor is such a law unconstitutional because it does not go as far as it might have gone in carrying out the mandate of the constitution.

4. SAME—*statute which is not ambiguous is not open to construction.* Where the intention of the legislature in enacting a statute is apparent from pre-existing laws on the same subject which have been frequently re-enacted in the same language, the court will not give the statute a meaning different from that plainly expressed.

5. MINES—*construction of section 9 of Mining act, as revised in 1911, requiring two available means of egress from mines.* Paragraph (*a*) of section 9 of the Mining act, as revised in 1911, providing that every mine shall have, in addition to its hoisting shaft, an escapement shaft or a communicating passageway to a contiguous mine, requires one additional means of egress, which, with the hoisting shaft, shall constitute two separate means of egress from the mine; and paragraph (*b*) of said section, requiring that the escapement shaft shall be not less than 500 feet nor more 2000 feet from the main shaft, does not apply to the hoisting shaft of the contiguous mine when the communicating passageway is the additional means of egress adopted.

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. W. O. POTTER, Judge, presiding.

DENISON & SPILLER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, R. R. FOWLER, State's Attorney, ALBERT D. RODENBERG, and GEORGE R. STONE, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

The plaintiff in error owns and operates two adjacent and contiguous mines in Williamson county, Illinois. The first mine was sunk and in operation several years prior to the revision in 1911 of the statute on mines and miners, of which enactment section 9 is presented to this court for construction. The first mine, or mine No. 1, complies in every respect with the provision of said section of the statute relative to hoisting and escapement shafts. Subsequent to the enactment of said statute the plaintiff in error sunk mine No. 2, which is adjacent to and contiguous to mine No. 1. Instead of opening an escapement shaft in mine No. 2 plaintiff in error constructed an underground passageway connecting with its mine No. 1 at a point 1000 feet from the hoisting shaft of mine No. 2. It is conceded by the plaintiff in error that this underground communicating passageway, as well as the hoisting shaft in mine No. 2, is

more than 2000 feet from either the escapement shaft or the hoisting shaft in mine No. 1, and it admits that both mine No. 1 and mine No. 2 are operated and worked by shafts at a depth of 235 feet from the surface of the ground, and that mine No. 1 has approximately 400 employees and that approximately 190 men are employed underground in mine No. 2. It is conceded that the underground communicating passageway is constructed in the manner required by the statute, and the same is true of the escapement shaft in mine No. 1. The director of the department of mines and minerals of the State of Illinois and the State mine inspector notified the plaintiff in error, before the commencement of this suit, to sink an escapement shaft in its mine No. 2 not less than 500 feet nor more than 2000 feet from the main hoisting shaft, and upon failure to comply with said notice the defendant in error, as State's attorney in and for said county, brought this suit at the direction of the department of mines and minerals to enjoin the plaintiff in error from continuing to operate mine No. 2 until it had constructed and was maintaining an escapement shaft in conformity with the requirements of the statute. The cause was submitted to the chancellor on bill and answer. The chancellor, after hearing arguments, entered a decree enjoining plaintiff in error from the further operation of mine No. 2 until an escapement shaft had been constructed within the distance prescribed by statute from the hoisting shaft of mine No. 2.

The only issue presented in this court by the assignments of error is whether or not the underground communicating passageway in question to mine No. 1 as a means of egress from mine No. 2,—the escapement shaft in mine No. 1 being a distance in excess of 2000 feet from the hoisting shaft in mine No. 2,—is a compliance with section 9. That section, so far as it refers to this issue, is as follows:

"(*a*) For every coal mine in this State, whether worked by shaft, slope or drift, there shall be provided and main-

tained, in addition to the hoisting shaft, or other place of delivery, an escapement shaft or opening to the surface, or an underground communicating passageway with a contiguous mine, so that there shall be at least two distinct and available means of egress to all persons employed in such coal mines.

"(*b*) In mines sunk after the passage of this act, the first escapement shaft shall be separated from the main shaft by such extent of natural strata as may be agreed upon by the inspector of the district and the owner of the property, but the distance between the main shaft and the escapement shaft shall not be less than 500 feet nor more than 2000 feet: *Provided,* that in mines employing ten (10) men or less the distance between the hoisting shaft and the escapement shaft shall not be less than two hundred and fifty (250) feet.

"(*c*) It shall be unlawful to employ underground, at any one time, more men than in the judgment of the inspector are necessary to complete speedily the connections with the escapement shaft or adjacent mine; and said number must not exceed ten men at any one time for any purpose in said mine until such escapement or connection is completed. * * *

"(*e*) Such escapement shaft or opening or communication with a contiguous mine as aforesaid, shall be constructed in connection with every seam of coal worked in such mine, and all passageways communicating with the escapement shaft or place of exit, from the main hauling ways to said place of exit, shall be maintained free of obstruction at least five feet high and five feet wide. Such passageways must be so graded and drained that it will be impossible for water to accumulate in any depression or dip of the same in quantities sufficient to obstruct the free and safe passage of men. No passageway to an escapement shall pass through a stable. At all points where the passageway to the escapement shaft or other place of exit is

intersected by other roadways or entries, conspicuous sign-boards shall be placed, indicating the direction it is necessary to take in order to reach such place of exit.

"(*f*) When operators of adjacent mines have, by agreement, established underground communications between said mines as an escapement outlet for the men employed in both, the intervening doors shall remain unlocked and ready at all times for immediate use. When such communication has once been established between contiguous mines, the operator of either shall not close the same without the consent of the operator of the contiguous mine and of the State inspector for the district: *Provided,* that when either operator desires to abandon mining operations the expense and duty of maintaining such communication shall devolve upon the party continuing operations and using the same."

It is contended by plaintiff in error that the requirement of the statute with reference to distance of an escapement shaft from the main hoisting shaft of a mine is applicable also to an underground communicating passageway with a contiguous mine. It is contended by the defendant in error that the provision of the statute with reference to distance does not permit an escapement shaft to be further than 2000 feet from the hoisting shaft of a mine, even though an underground communicating passageway is constructed; that the underground communicating passageway can only be utilized to reach an escapement shaft within the distance of 2000 feet prescribed by the statute. The question therefore is whether by this act the legislature intended that an escapement shaft should be within 2000 feet of every hoisting shaft, whether the escapement shaft be in the same mine or in a contiguous mine connected by a communicating passageway, or whether the purpose of the statute is met by connecting one mine with a contiguous mine at a point not more than 2000 feet from the hoisting shaft, even though the escapement shaft in the contiguous mine may be more than 2000 feet from the hoisting shaft.

In other words, does this contiguous mine, here known as mine No. 1, when it is connected by an underground passageway at a point not more than 2000 feet from the hoisting shaft in mine No. 2, afford the second means of egress from mine No. 2, as contemplated by the act in relation to mines and miners as revised in 1911?

The construction of section 9 of the act has not been previously before this court and no cases construing similar statutes have been pointed out in the briefs of counsel. The principal object in construing a statute is to ascertain and give effect to the intention of the legislature. The entire act, together with the pre-existing laws on the subject and any changes therein, and also the purposes of the act, should be considered. (*People* v. *Chicago, Burlington and Quincy Railroad Co.* 290 Ill. 327; *City of Chicago* v. *Max,* 289 id. 372.) The intention is to be gathered not only from the language of the act, but also from the reason and necessity for the enactment, the evil sought to be remedied and the objects and purposes to be attained by it. (*Kehl* v. *Taylor,* 275 Ill. 346; *People* v. *Abbott,* 274 id. 380; *Stribling* v. *Prettyman,* 57 id. 371.) It is also an elemental rule of construction that a statute should be so construed, if possible, as to give to each phrase and word its ordinary and accepted meaning. *Ruda* v. *Industrial Board,* 283 Ill. 550; *Crozer* v. *People,* 206 id. 464.

The duty resting on the legislature to provide for the safety and welfare of miners is one of the few mandates found in the constitution of 1870. By section 29 of article 4 of the constitution this mandate is expressed in the following language: "It shall be the duty of the General Assembly to pass such laws as may be necessary for the protection of operative miners, by providing for ventilation, when the same may be required, and the construction of escapement shafts, or such other appliances as may secure safety in all coal mines, and to provide for the enforcement of said laws by such penalties and punishments as may be

deemed proper." Pursuant to that mandate various legislatures have passed laws relating to this subject. The legislature in 1872 passed such an act, section 3 of which provided that in all coal mines or collieries in which more than ten miners are employed in each twenty-four hours, "if there is not already an escapement shaft to each and every said coal mine or colliery, or a communication between each and every said coal mine or colliery and some other contiguous mine, there shall be an escapement shaft, making at least two distinct means of ingress and egress, for all persons employed or permitted to work in such coal mine or colliery. Such escapement shaft, or other communication with a contiguous mine, as aforesaid, shall be constructed in connection with every vein or stratum of coal worked in such coal mine or collieries, and the time to be allowed for such construction shall be one year." The legislature in 1879 revised the Mining act, but said section 3 was not changed except by striking out the word "collieries." In 1883 the act was again amended, but no change was made in section 3 with relation to providing an escapement shaft or communication with some contiguous mine, so as to make at least two distinct means of ingress and egress to persons employed in such mine. The next amendment of this act was in 1885. Section 3, however, remained unchanged. In 1887 the act was again amended, so that in addition to the provision that there should be an escapement shaft or a communication between one mine and some contiguous mine, so as to make two distinct means of ingress and egress, section 3, as amended, provided for a larger passageway than theretofore required, and that owners of such mines, while operating the same, "shall keep open a roadway at least five feet wide and five feet high, thereby forming a communication as contemplated in this act, and in no case hereafter shall the workings of any mine be driven closer than ten feet to the line of land of any adjacent owner without the written consent of such owner.

And in all cases where the shaft of one mine has been used or may be hereafter used as an air or escapement shaft for another mine, neither owner or operator shall close or obstruct his shaft or workings so as to prevent the use of the same as an escapement or air shaft without first giving one year's notice in writing to the other operator or owner of his intention to abandon his mine; but the operator continuing the working of his mine shall be at the expense of keeping such abandoned workings in repair; each and every such escapement shaft shall be separated from the main shaft by such extent of natural strata as shall secure safety to the men employed in such mine; and before any escapement shaft shall be located, or the excavations for it begun, the district inspector of mines shall be duly notified to appear and determine what shall be a suitable distance for the same. The distance from the main shaft for such escapement shaft shall not be less than 300 feet." In 1899 section 3 was again amended, paragraph (*a*) of said section, however, remaining as it had been theretofore. Paragraph (*c*) provided "such escapement shaft or opening or communication with a contiguous mine, as aforesaid, shall be constructed in connection with every seam of coal worked in such mine," said paragraph providing also for the care of the passageways communicating with the escapement or the place of exit. Paragraph (*h*) provided that all escapement shafts and passageways leading thereto or to the works of a contiguous mine must be carefully examined at least once a week by the mine manager or someone delegated by him. Paragraph (*i*) provided as follows: "When operators of adjacent mines have by agreement established underground communication between said mines as an escapement outlet for the men employed in both, the roadways to the boundary on either side shall be regularly patroled and kept clear of every obstruction to travel by the respective operators and the intervening door shall remain unlocked and ready at all times for immediate use.

When such communication has once been established be-
tween contiguous mines it shall be unlawful for the oper-
ator of either mine to close the same without the consent
both of the contiguous operator and of the State inspector
for the district." Section 3 remained in this condition un-
til 1911, when the Mining act was revised and section 3
became section 9 hereinbefore quoted. Paragraph (*d*) of
section 3 of the act before the amendment of 1911 pro-
vided: "Every escapement shaft shall be separated from
the main shaft by such extent of natural strata as may be
agreed upon by the inspector of the district and the owner
of the property, but the distance between the main shaft
and escapement shaft shall not be less than 300 feet with-
out the consent of the inspector, nor more than 300 feet
without the consent of the owner."

Since the act of 1911 was a revision of the entire act
concerning mines and miners, section 9 and its different
paragraphs were all enacted or re-enacted at one and the
same time, so that we do not have here the question of the
repeal of an act or part thereof by implication, as such can
not apply to different portions of one act all of which were
enacted at the same time. There can be no doubt that by
the enactments of this law prior to the revision of 1911
the legislature intended that the use of another and con-
tiguous mine by means of a passageway should constitute
a second means of ingress and egress for a mine which did
not have an escapement shaft, so that unless by the revi-
sion of 1911 a change in the intention of the legislature
is shown, we are forced to the conclusion that a contigu-
ous mine may still be used as a second egress where con-
nected as required by the act.

Defendant in error earnestly insists that because section 9
as revised in 1911 provides that the first escapement shaft
shall not be less than 500 feet nor more than 2000 feet
from the hoisting shaft, therefore, unless the communicat-
ing passageway with the contiguous mine connects with the

escapement shaft or hoisting shaft of such contiguous mine within 2000 feet from the hoisting shaft of the mine from which egress is to be had, such communicating passageway does not comply with the law. It is evident from reading these statutes that prior to the revision of 1911 the Mining law did not require that either an escapement shaft or connection with a contiguous mine should be within 2000 feet of the hoisting shaft of the mine from which egress is to be made. Paragraph (*d*) of section 3 of the Mining law of 1909 provided, as we have seen, that an escapement shaft should not be less than 300 feet without the consent of the inspector and not more than 300 feet without the consent of the owner, so, of course, when the owner voluntarily placed such escapement shaft more than 300 feet from the hoisting shaft there was a compliance with that law. In the act as revised in 1911 the matter treated in paragraph (*d*) of section 3 of the law of 1909 is provided for in paragraph (*b*) of section 9 of the act. This paragraph provides that "the first escapement shaft shall be separated from the main shaft by such extent of natural strata * * * not less than 500 feet nor more than 2000 feet." Paragraph (*a*) of section 9 requires that there be provided and maintained "an escapement shaft or opening to the surface, or an underground communicating passageway with a contiguous mine, so that there shall be at least two distinct and available means of egress to all persons employed in such coal mines." This paragraph provides for one of two means of egress, which, with the hoisting shaft, shall constitute two separate and distinct means of egress. The first referred to is the escapement shaft, and the second or alternate means is the communicating passageway to a contiguous mine. There is no escaping the conviction, therefore, that where in paragraph (*b*) of section 9 the legislature provides that the "first escapement shaft" shall be not less than 500 feet nor more than 2000 feet from the main shaft such language refers to the first means of

egress,—*i. e.,* the escapement shaft provided for in paragraph (*a*) of section 9,—and not to the second means,—*i. e.,* the communicating passageway in paragraph (*a*) provided for. Had the legislature intended that all escapement shafts and means of egress to the surface should be within 2000 feet of the main shafts, the simplest language it could have employed to convey that intention would have been to have said so. In no place in the act are two escapement shafts required to be sunk in any one mine. The plain language of paragraph (*b*) is that the first means of egress provided for, other than the hoisting shaft, is the escapement shaft. While it is evident that in using the communicating passageway to a contiguous mine the surface would be reached either through the escapement shaft or the hoisting shaft of such contiguous mine, yet such escapement or hoisting shaft cannot be construed to be the "first escapement shaft" referred to in paragraph (*b*).

It was provided in section 3 of the Mining act of 1879 that in no case should the workings of one mine be driven closer than ten feet to the line of an adjoining mine without the consent of the owner. This same provision has been retained in the various enactments of this law and appears in the revision of 1911 as section 24 thereof. By the provision that mining should not be extended closer than ten feet to the line of any contiguous mine there is left a solid wall twenty feet in thickness, through which the only opening is the passageway for purposes of egress, as provided by the act. A door is required to be kept there, unlocked. In the instant case there is no escapement shaft in mine No. 2, but the connection by passageway with the contiguous mine takes place within 2000 feet of the hoisting shaft of mine No. 2, it being shown by the record that such intersection is at a point about 1000 feet from the hoisting shaft, so that if the intention of the legislature in the revision of the act was that the contiguous mine,—in this case mine No. 1,—should be considered as a means of egress

from mine No. 2, then the contention of defendant in error that either means of egress from mine No. 2 to the surface must be within 2000 feet from the hoisting shaft cannot obtain as to such passageway.

Statutes of this character should be construed liberally, to the end that the mandate of the constitution be carried out. It is extremely important that all necessary provision should be made by the legislature for the care, safety and welfare of the miners in their dangerous underground work, and it is the duty of the court to give to the statute every reasonable intendment on the part of the legislature looking to the end that this mandate of the constitution be carried out, and if there is anything in the language of the act by which the court can construe the act as providing any additional means or safeguards for the protection of miners, it is the duty of the court to give the act such construction. We cannot, however, escape the conviction that it was the intention of the legislature that a contiguous mine, connected by a passageway and doorway with the mine from which egress is had, and which contiguous mine cannot be abandoned as a passageway, should afford the second means of egress therefrom, and that where, as here, the point of intersection of the communicating passageway with the entries, roadways or passageways of the contiguous mine does not exceed 2000 feet, this requirement of the law requiring a second means of egress has been met. The statute in question is not ambiguous. Its language regarding egress by connection with a contiguous mine has been carried from the earliest law on that subject to the present one, and this court has no right to say that the legislature did not mean what it in plain language said, particularly when that language has been re-enacted as frequently as here. (*Stiles* v. *Board of Trustees,* 281 Ill. 636; *Illinois Western Electric Co.* v. *Town of Cicero,* 282 id. 468.) This rule applies and binds this court even though that portion of the law may produce evil consequences.

Defendant in error contends that if this act be not construed as requiring an escapement shaft within 2000 feet of every hoisting shaft then the law is unconstitutional, as not complying with the mandate of the constitution commanding the legislature to provide necessary means for safety of miners. While we are of the opinion that had the legislature seen fit to require all mines to have an escapement shaft within 2000 feet of the hoisting shaft, whether such escapement shaft be in that mine or in a contiguous mine, it would have afforded greater safety to the miners, yet we cannot say that because the law passed did not go as far as it might or should have gone in carrying out the mandate of the constitution therefore such law is unconstitutional; nor can the court for that reason usurp the province of the legislature in the making of laws nor ignore the plain language of the statute. The making of laws lies in the province of the legislature. A court has no right to say that the legislature did not mean what in plain language it said. (*Illinois Western Electric Co.* v. *Town of Cicero, supra.*) It is given to the legislature to enact laws and to the courts to construe them as enacted, and while in case of laws passed in compliance with the mandate of the constitution they are to receive the most liberal construction in the light of such mandate, yet it is not given to courts to enact laws or to say that the legislature intended a different law than that plainly expressed in the statute.

We are therefore of the opinion that the circuit court erred in entering a decree enjoining plaintiff in error from conducting its mine No. 2, and the decree will be reversed and the cause remanded, with directions to the circuit court to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*