R. V. Carroll et al., Appellees, v. Stella Wilkerson et al. Lester Yard and Earl Yard, Appellants.

Gen. No. 8,147.

Opinion filed January 25, 1928.

HAROLD B. TUNNELL and FRANK M. RAMEY, for appellants.

HARRY C. STUTTLE, guardian *ad litem* for George W. Carroll, appellee.

GEO. P. O'BRIEN, for appellees.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

Appellees filed their amended bill in the circuit court of Montgomery county to construe the will of James Carroll, deceased. One of the defendants, George W. Carroll, who was under legal disability, answered by his guardian *ad litem*. All of the other defendants demurred to the amended bill. Their demurrer was overruled and defendants answered. Replications were filed and evidence was taken in open court. The chancellor found the allegations of the bill to be true, and entered a decree in accordance with the prayer of the bill. Two of the eleven defendants in the court below have appealed from the decree. One of the defendants, George W. Carroll, by his guardian *ad litem,* joins with appellees in seeking to uphold the decree of the circuit court.

James Carroll, who executed the will under construction, died on October 11, 1925, at the age of 95 years. R. V. Carroll, a son of the testator and one of the appellees, was named executor and qualified as such. The will involved was executed and published on May 10, 1919. At that time testator was 89 years old.

Decedent died leaving a widow, Elizabeth Carroll, who died on November 3, 1925, less than one month after decedent's death. Decedent died leaving children, namely, Richard V. Carroll, Mary I. Wright, Laura Bell Burton, Lulu May Willis and George W. Carroll, all of whom survived each of their parents. Another daughter, Ethel Flowers, died on September 25, 1918, before the execution of the will, leaving two children, Oval Hunt and Kathryn Rademacher, grandchildren of decedent, both of whom survived their grandparents. A daughter, Minerva Yard, died on September 3, 1893, leaving Earl Yard, Lester Yard and Chester Yard, grandchildren of said decedent, and Dorothy Freeman and Delberta Freeman, a son and daughter of deceased daughter of said Minerva Yard and great grandchildren of said decedent, all of whom survived the said decedent and his widow. Another daughter of decedent, Martha Treadway, died on September 13, 1893, leaving Stella Wilkerson and Grover C. Treadway, her children and grandchildren of said decedent, both of whom survived their grandparents. Hattie C. Paul, William Carroll, Elizabeth A. Carroll, Emma D. Carroll and Ella N. Carroll, all children of decedent, died a great many years prior to the execution of said will, leaving no children or descendants of a child or children them or either of them surviving.

By his will testator gave all of his property to his widow for and during her natural life. Upon the death of his widow testator made specific devises of real estate in separate portions to his children and grandchildren, namely, to Richard V. Carroll, Mary I. Wright, Laura Bell Burton, Lulu May Willis and George W. Carroll. Likewise he made separate devises of real estate to his grandchildren, the daughters of Ethel Flowers, deceased, reciting thereafter: "This will make my grandchildren, daughters of my deceased daughter, Ethel Flowers an equal portion of my estate," to his grandchildren, the sons and daughters

of Minerva Yard, deceased, and to his grandchildren, the son and daughter of Martha Treadway, deceased, the various devises being followed by the descriptions of the property devised in each case about which there is no contention in this cause. The last paragraph of the will, which immediately precedes the nomination of an executor, reads as follows:

"Furthermore, I give, devise, and bequeath that after the death of my wife, Elizabeth Carroll, all the notes, bonds, money and personal property that shall remain a part of my estate shall be divided equally among my children, with the exception of Mary I. Wright, who has received a larger bequest than the others."

By a codicil R. V. Carroll was named as the sole executor of the will. After the administration of the estate there remained in the hands of the executor as a part of said estate the sum of $9,000, proceeds of notes, bonds, money and personal property, to be distributed, and the complainants prayed a construction of said will and that said funds be distributed to the living children of said decedent (except Mary I. Wright), namely, Richard V. Carroll, Laura Bell Burton, Lulu May Willis and George W. Carroll, in accordance with the terms of the will.

Appellants by their answer denied that said James Carroll intended in said will that all notes, bonds, money and personal property should go to his children living at the date of the making of the will and surviving said James Carroll, with the exception of Mary I. Wright, but they say that said testator intended, and the correct construction of said will is, that after the death of Elizabeth Carroll, widow, all notes, bonds, money and personal property remaining part of said estate, after paying costs of administration and debts of said estate, should be divided equally among the surviving children of said James Carroll, except Mary I. Wright, and among the issue of such of the testa-

tor's children as had died before said testator, leaving issue surviving said testator and said Elizabeth Carroll, such issue to take *per stirpes* the shares to which their respective parents would have been entitled, had they survived said James Carroll and said Elizabeth Carroll.

In the order construing the will the court found that it was the intention of the testator to give the personal property involved to testator's living children, except Mary I. Wright, and construed the will and decreed that the fund should be distributed in accordance with the prayer of the bill of complaint. Appellants have brought the record by appeal to this court for review.

Since the amendment of 1911 to section 50 of the Chancery Act, Cahill's St. ch. 22, ¶ 50, the existence of a trust is not essential to the jurisdiction of equity to construe wills where there is doubt or uncertainty as to the rights and interests of parties arising out of ambiguous language in the will. (*Bimslager v. Bimslager,* 323 Ill. 303; *McCarty v. McCarty,* 275 Ill. 573; *Sherman v. Flack,* 283 Ill. 457; *Wakefield v. Wakefield,* 256 Ill. 296; *Ward v. Caverly,* 276 Ill. 416.) But it has also been held that where the only point in issue in a bill to construe a will is clearly laid down in a line of decisions, so that it can be regarded as settled law, the will is neither uncertain nor ambiguous and a court of equity will not take jurisdiction under the Act of 1911 where there is no equitable estate to be protected nor equitable right to be enforced. (*Greenough v. Greenough,* 284 Ill. 416; *McCarty v. McCarty, supra; Metsker v. Metsker,* 320 Ill. 547.)

The question at issue in this case involves a construction of section 11 of the act concerning "descent," Cahill's St. ch. 39, ¶ 11, and particularly in a case where there are children (legatees) who have died prior to the execution of the will leaving issue, and children who have died many years prior to the

execution of the will, leaving no issue, and where there is a provision in the will bequeathing a fund to "the children of testator," as a class, that it "should be divided equally among my children, except Mary I. Wright." The section in general has been exhaustively construed, possibly against the weight of authority, but with the better reasoning in *Kehl v. Taylor,* 275 Ill. 346, and it was held that in a case where the legatee or devisee died leaving issue, the issue would succeed to the legacy or devise, whether the legatee or devisee died before or after the execution of the will. In *Kehl v. Taylor, supra,* William M. Miller died testate seized of certain lands. Five children were born to the testator, three of whom had died prior to the execution of the will in question. Two of the children had died intestate, leaving no child or children or descendants thereof. The third, Nancy Bell Walton, had died two years prior to the execution of the will, leaving her surviving a daughter, Nancy Bell Leinweber, one of the parties to said suit. The testator devised certain lands to his wife to have and use during her life "and at her death to my children in fee simple absolutely." In a partition suit the question arose squarely whether the grandchild, Nancy Belle Leinweber, took an interest in the land, and the court, reversing the circuit court of Mason county, held that under the terms of the will and the construction of said section 11, Cahill's St. ch. 39, ¶ 11, that the granddaughter took one-third interest in the lands. In that case the facts were identical with the facts in the case at bar. There were two children who had died prior to the execution of the will, leaving no issue, but there was no contention that they came within the class denominated "children" by testator's will. In *Kehl v. Taylor,* the court, citing the rule in other States, held:

"The decisions in *In re Nicholson's Estate* and *Pimel v. Beljemann* lose much of their force as authority in this State under the uniform holdings of our

court above cited, that the statute applies to gifts to children as a class as well as to gifts to them by name. In the following cases, in construing similar statutes, the legatees died before the will was made, but it was held that the children of such legatees took what such legatees would have taken had they survived the testator: *Nutter v. Vickery,* 64 Me. 490; *Bray v. Pullen,* 84 id. 185; 24 Atl. Rep. 811; *Minter's Appeal,* 40 Pa. 111; *Bradley's Estate,* 166 id. 300; 31 Atl. Rep. 96; *Wildberger v. Cheek,* 94 Va. 517; 27 S. E. Rep. 441; *Jamison v. Hay,* 46 Mo. 546; *Mower v. Orr,* 7 Hare, 473; *Winter v. Winter,* 5 id. 306; *Barkworth v. Young,* 4 Drew, 1; *Wisden v. Wisden,* 2 Smale & G. 404.

"Without reviewing the various decisions on this question and the reasons given to sustain the conclusions there reached, we think the construction most in harmony with both the spirit and intention of the act as well as the policy of our law is that which allows all devisees or legatees of the class named in the statute to take, irrespective of the time of their death, either before or after the time of the execution of the will, so long as their death occurred prior to that of the testator, leaving issue, and no provision is made for such contingency. Justice and equity would seem to require that all children, in the absence of special circumstances, should inherit equally from their parents, and that in case of the death of one or more of them their children should take the portion which their deceased parent would have taken had he or she survived the testator, and such is the policy of our laws of descent."

The court further held: "Under the harsh rule of the common law all gifts and devises were avoided by the death of the devisee or legatee before that of the testator. At common law a bequest or devise by will to a child of the testator who was dead when the will was made was void, and a bequest or devise to a child who died after the will was made and before the tes-

tator, lapse; and such rules would prevail in this State but for the statute in question, and do prevail where the beneficiaries are other than children or grandchildren.''

And the court further said: ''It was to provide against such contingencies that this statute was enacted. It does not, in direct terms or by implication, take any notice of the time of the execution of the will or impose as a condition to its operation or non-operation upon a gift or devise that the devisee or legatee shall be *in esse* at the date of the execution of the will. The only conditions imposed by it are, that the devisee or legatee shall die before the testator, leaving issue surviving the testator, and that no provision shall be made in the will for the contingency of the death of such devisee or legatee before that of the testator. The words 'shall die' refer not to the time of the execution of the will but to the death of the devisee or legatee before the testator, and, we think, include those whose death occurred prior to the execution of the will as well as those whose death occurred in the interim between the making of the will and the death of the testator.''

Section 11 of the Statute of Descent, Cahill's St. ch. 39, ¶ 11, provides as follows: ''Whenever a devisee or legatee in any last will and testament, being a child or grandchild of the testator, shall die before such testator, and no provision shall be made for such contingency, the issue, if any there be, of such devisee or legatee, shall take the estate devised or bequeathed as the devisee or legatee would have done had he survived the testator, and if there be no such issue at the time of the death of such testator, the estate disposed of by such devise or legacy shall be considered and treated in all respects as intestate estate.''

Appellees in this case contend strenuously that the wording in the will—''shall be divided equally among my children''—indicates that the beneficiaries are to

take as individuals, and again appellees contend that if the bequest in the case at bar is to be treated as a gift to a class, then the class includes all of testator's children, living or dead. As to the first contention, we can see no distinction in the wording of the wills between that in *Kehl v. Taylor* and the case at bar, except in the *Kehl* case it is a devise of real estate and in the case at bar personalty is bequeathed. The contention is in direct conflict with the rule laid down in *Kehl v. Taylor, supra.* The second contention is that if children are to be taken as a class, then those dying without issue should be included as well as those dying leaving issue; that under the last clause in section 11, Cahill's St. ch. 39, ¶ 11, the five children of testator who died leaving no issue—some of them dying in infancy and four of them dying about 50 years before the execution of the will—would take their equal part and portion in the bequest, as a bequest, which would become intestate estate to be divided among the heirs at law of testator. This would include Mary I. Wright, excluded by the terms of the bequest.

There are several answers to this contention. It might be said that the same situation was before the court in *Kehl v. Taylor, supra,* and was ignored by the court and counsel. That part of section eleven, upon which appellees base their contention, reads, "and if there be no such issue at the time of the death of such testator, *the estate disposed of* by such devise or legacy shall be considered and treated in all respects as intestate estate." It must be noticed particularly that the statute uses the terms "the estate disposed of by such devise." But under the common law the devise or legacy to a child of the testator who was dead when the will was made was void, and unless such child left issue surviving the common law remains in force in this State and is not changed by the statute in question. It was only a bequest or devise to a child who died after the will was made and before testator

that lapsed under the common law, or that could, by any reasoning under the statute in question, be construed as intestate estate, and that question does not arise in this case. There was no estate disposed of to the five children of testator, who died long prior to the making of said will leaving no issue surviving, for the reason that no such devise or bequest could be made. It would be void in its inception. In this connection the language of the statute referring to "the estate disposed of by such devise or legacy," contemplates an estate, inchoate in its nature that may ripen into a succession except for the happening of some contingency, and cannot contemplate an estate which is void and beyond all possibility of inception. Appellees urge strongly that the testator is presumed to have intended by his will to dispose of all of his property and to leave no part of it as intestate, and that the court will adopt any reasonable construction of the will rather than hold that the testator intended to die intestate as to any of his property, citing *Suiter v. Suiter,* 323 Ill. 519; *Pontius v. Conrad,* 317 Ill. 241; *Wells v. Dalies,* 318 Ill. 301; *Watts v. Killian,* 300 Ill. 242; *Jensen v. McMahon,* 324 Ill. 574. Such is the law, and the presumption is so strong that it is conclusive that testator did not intend to bequeath any of his property to children who had died without issue over 50 years before the execution of the will, for the purpose of producing an intestacy as to a portion of his estate. The testator is presumed to have known the law and to have been familiar with or had counsel upon the ruling made in *Kehl v. Taylor, supra,* which was the law of this State three years prior to the execution of said will, and which has been followed in *McNamara v. McNamara,* 293 Ill. 54, 58.

In the opinion of this court the decree of the circuit court of Montgomery county should be reversed and the cause remanded, with directions to enter a decree directing a division of said fund into seven equal

parts to be distributed one part each to the living children of said testator (except Mary I. Wright), and one part each to the descendants of Ethel Flowers, Minerva Yard and Martha Treadway, the three deceased daughters of testator, as found by the decree of the lower court, and it is so ordered.

*Reversed and remanded with directions.*